DONALD SWEITZER *et al.*, Plaintiffs-Appellants, v. THE CITY OF O'FALLON, Defendant-Appellee.

Fifth District   No. 5—84—0320

Opinion filed June 27, 1985.

Thomas A. Thebus, of O'Fallon, for appellants.

Delmar O. Koebel, of Lebanon, for appellee.

PRESIDING JUSTICE JONES delivered the opinion of the court:

The plaintiffs brought an action in the circuit court of St. Clair County to declare a zoning classification of defendant city of O'Fallon arbitrary and unreasonable and therefore void. The circuit court granted the defendant's motion for a directed verdict at the close of the plaintiffs' case. The court ruled that plaintiffs had failed to show by clear and convincing evidence that the defendant's action was arbitrary, unreasonable or capricious. Plaintiffs appeal that decision.

The plaintiffs, all dealers in manufactured housing (prefabricated, modular and mobile home structures) doing business in and around the city of O'Fallon, have challenged the validity of an ordinance that restricts the location or use of manufactured housing to certain specified zones or districts and prohibits them from others. The ordinance makes 11 zoning classifications, with corresponding descriptions of which uses are permitted in each such zone or district. Among the 11 classifications are three single-family residential districts (SR–1, SR–2 and SR–3), a district for modular and immobilized mobile homes (MH–2) and a mobile home district (MH–1). Modular housing is permitted in the MH districts and in the SR–3 district, although it is not permitted in either the SR–1 or SR–2 district. Mobile homes are excluded from each SR district and permitted only in the MH–1 district. There was evidence at trial that the city of O'Fallon has provided for three mobile home parks and three mobile home subdivisions within its boundaries.

Benjamin Brown, a land planning and zoning consultant, testified on plaintiffs' behalf as an expert witness that substantial changes have been brought about in the manufactured housing industry since the Mobil Home Construction and Safety Standards Act (42 U.S.C. sec. 5401 *et seq.* (1976)), sponsored by the Department of Housing and Urban Development (HUD), went into effect on June 15, 1976. According to his testimony, the most significant change that has resulted is that manufactured housing is not nearly as susceptible to fire as it was prior to the enactment of HUD's regulations. This improvement is primarily the consequence of alterations in building materials and fixtures. Specifically, the regulations provide that furnace and water

heater alcoves must be insulated with fire retardant material. Circuit breakers for all electrical outlets are mandatory. All building materials, including carpeting, paneling and floorboards, are required to satisfy certain flame-spread specifications. Appliances are also subject to fire-oriented standards.

Brown also testified that he was appointed by the governor in 1981 to a task force on home ownership. After conducting a study, the body had recommended the elimination of all zoning regulations that permit some forms of housing and prohibit others in the same district.

■ The plaintiffs contend on appeal that there is no longer a valid reason for excluding all manufactured housing from residential zoning districts in the city of O'Fallon. This contention is founded on the assertion that changes in construction standards for the manufactured housing industry have made mobile homes virtually indistinguishable from conventional site-built homes. This, it is argued, eliminates any rational distinction in an ordinance between mobile homes and site-built homes.

The Supreme Court of Illinois has heretofore unequivocally expressed its attitude on the matter of zoning for mobile home location within a municipality. In *Village of Cahokia v. Wright* (1974), 57 Ill. 2d 166, 311 N.E.2d 153, the supreme court held that the right to restrict mobile homes to areas zoned as mobile home parks is a valid exercise of the police power conferred upon a municipal corporation where it is manifested by a comprehensive zoning ordinance.

In addition to the *Village of Cahokia* decision, it is a fundamental principle of law that a zoning ordinance is presumed valid, and the burden of establishing its invalidity is on the party attacking the ordinance. (*Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 324 N.E.2d 406.) In the absence of evidence tending to rebut the presumption, the validity of the ordinance should be upheld.

The question in the instant case is closely analogous to the one addressed by our supreme court in *Village of Cahokia,* that is, whether a municipality may lawfully restrict the location or use of mobile homes to those districts zoned as mobile home parks and mobile home subdivisions. The plaintiffs contend that the changes brought about by the 1976 HUD regulations have made the decision in *Village of Cahokia* an obsolete one. In other words, plaintiffs maintain that there is no comparison between the mobile home *circa* 1975 and that of 1985. Plaintiffs further argue that one can no longer rationally distinguish between contemporary mobile homes and conventional site-built homes. We disagree.

The record indicates that significant changes have occurred in the

4

manufactured housing industry subsequent to *Village of Cahokia* to improve the safety of contemporary mobile homes, particularly in the area of fire prevention. The plaintiffs' expert testified that the HUD regulations are directly responsible for upgrading fire safety in mobile homes. However, significant improvements in fire prevention cannot, of themselves, support the plaintiffs' argument that mobile homes manufactured prior to the HUD regulations are entirely different from those constructed today. Something more is needed to eradicate the distinction made for valid zoning purposes.

Evidence of record tending to show that the basic structure of a mobile home has changed is conspicuously absent. The obvious reason for this is that the basic structure of a mobile home has not changed significantly. The contemporary mobile home still possesses the same type of running gear beneath it that was utilized prior to 1976. More importantly, the mobile home of today remains unsuitable for attachment to a permanent foundation. It is generally supported by a steel frame and tied down by cables to prevent it from being blown away or displaced in severe winds. We find that the plaintiffs have failed in their attempt to meet the burden imposed on them in that they have failed to establish by clear and convincing evidence that the comprehensive zoning ordinance in the city of O'Fallon is invalid.

■■ ■ In addition, plaintiffs cannot succeed because it is well established that where opinions may differ as to the reasonableness of the existing zoning classifications, the legislature's judgment on the matter becomes conclusive. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 312 N.E.2d 625.) The plaintiffs' expert testified that in 1981, he had been appointed by the governor to a task force on home ownership. Among the recommendations made to the governor a year later was one calling for the elimination of all zoning ordinances that permit some forms of housing and prohibit others within the same district. The report of the task force indicates that its conclusions were to be contemplated at the 1982 legislative session. To date, there is no indication that the recommendation has taken the form of proposed legislation. Consequently, we must assume that the decision in *Village of Cahokia,* permitting the exclusion of mobile homes from areas not designated as mobile home parks, remains in concert with the will of the legislature. It is also worth mentioning in this context that the rule and function of the judiciary is not to legislate, but rather to interpret the legislature's intent. Therefore, we must decline plaintiffs' invitation to use the recommendation of the task force as a basis for reversing the decision of the trial court.

The plaintiffs cite *Robinson Township v. Knoll* (1981), 410 Mich.

293, 302 N.W.2d 146, in support of their contention that there is no longer a valid reason for excluding all types of manufactured housing from residential districts in the city of O'Fallon. We find, however, that plaintiffs' reliance on the *Robinson Township* case is inappropriate for several reasons. First, that dispute involved only mobile homes. In the instant case, plaintiffs have maintained that all types of manufactured housing, including mobile homes, should be permitted in residential zoning districts. Second, the areas involved differ significantly in the quantitative sense. Robinson Township in Michigan encompasses a much larger geographic region than does the city of O'Fallon. Accordingly, it is plausible that the court in *Robinson Township* may have been concerned that exclusion of mobile homeowners from an area as large as a township, with the exception of those districts zoned as mobile home parks and subdivisions, was unreasonable. Third, there were no existing mobile home parks in the community where the *Robinson Township* controversy arose. The instant case presents an entirely different scenario in this respect. The evidence adduced at trial showed that there are three mobile home parks and three mobile home subdivisions in the city of O'Fallon.

We feel compelled to follow the ruling of our supreme court in the *Village of Cahokia* decision. That decision establishes that it is a reasonable exercise of the police power to restrict the use or location of mobile homes to those areas designated as mobile home parks or mobile home subdivisions. There was no clear and convincing evidence in the record that would permit any other finding. Furthermore, it must be remembered that this is not a situation where mobile homes have been excluded altogether by a comprehensive zoning ordinance. To the contrary, the city of O'Fallon has established three mobile home parks and three mobile home subdivisions.

For the reasons stated in this opinion, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KASSERMAN and KARNS, JJ., concur.