Yehudit Nardi, Plaintiff-Appellant, v. Haim Segal, Defendant-Appellee.

Gen. No. 67–107.

Second District.

December 27, 1967.

Maurice M. Loman, of Chicago, for appellant.

Diver, Diver, Ridge and Brydges, of Waukegan, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

The plaintiff, Yehudit Nardi, brought suit in the Circuit Court of Lake County against the defendant, Haim Segal, for an arrearage of child support in the sum of $1,125, together with interest and reasonable attorney's fees based upon a divorce decree entered by the Rabbinical Court of Tel-Aviv-Jaffa on May 12, 1963. On motion of the defendant to dismiss the complaint, the court found that it had no jurisdiction either of the parties or subject matter and ordered that the plaintiff's complaint at law be dismissed and stricken. It is from the order of dismissal that the plaintiff prosecutes her appeal.

The defendant and plaintiff were living together as husband and wife in the State of Israel. A written agreement executed by them and made a part of the divorce decree, provided that the defendant was to pay the equivalent of $100 per month for the support of the two

natural children of the parties and further provided for an increase of the monthly support for the children based upon a cost of living index. At the time of the filing of the complaint (December 27, 1966), the cost of living index had risen 25%, and the defendant had made no payments for nine months.

The defendant at the time of the filing of the complaint maintained a residence in North Chicago, Illinois, while the plaintiff resided in Tel-Aviv, Israel. An authenticated copy of the decree of the Rabbinical Court of Tel-Aviv-Jaffa was attached to the complaint. The defendant was served by personal service and, thereafter, he filed a special and limited appearance challenging the jurisdiction of the court.

The issue raised by this appeal is whether or not the court had jurisdiction to enforce a judgment of a foreign country for child support.

■ ■ In the case of Clubb v. Clubb, 402 Ill 390, 393–394, 84 NE2d 366 (1949), the Supreme Court held that the full faith and credit clause of the United States Constitution will not be construed as embracing public acts, records and judicial proceedings of other countries. In that case, the plaintiff-wife, was granted a divorce in England in 1929. The decree required the defendant to pay alimony during their joint lives or until further order of the court. The defendant was subsequently transferred by his employer to Chicago where he resided at the time of the suit. The plaintiff filed suit in chancery, based on the English decree, in which she prayed for judgment for the unpaid alimony, with interest, and unpaid attorney's fees and costs. The chancellor dismissed the petition for want of equity and this was affirmed. The court at page 399 said:

> "The rule of comity between nations would justify our recognition of a decree of a foreign country, but we do not believe comity would require us to enforce a foreign decree for alimony where no law exists

here granting power to our chancery courts for that purpose. Comity, in a legal sense, is neither matter of absolute obligation on the one hand nor of mere courtesy and good will on the other, but it is a recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience and to the rights of its own citizens who are under the protection of its laws."

Dealing with the power of a court of equity to assume jurisdiction to enforce a foreign country's decree for alimony, the court went on to say at page 400:

"There being no statute conferring specific authority on courts of equity to enforce decrees of a foreign country, we have considered whether or not under its general powers a court of equity might assume such jurisdiction. We have heretofore held that jurisdiction of courts of equity to determine divorce cases and all matters relating thereto is conferred only by statute, and that these courts may exercise their powers in such matters within the limits of the jurisdiction conferred by the statute and not otherwise, as the jurisdiction depends solely upon the grant of the statute and not upon general equity powers." . . . (citations omitted).

". . . If a court of equity in our State has no general powers over divorce cases and all matters relating thereto, and citizens of our State cannot procure relief in such matters unless statutory authority so permits, it would not be just for us through claimed comity or alleged general powers to allow enforcement by our equity courts, through civil contempt, of a decree of a foreign country for the payment of alimony to one of its subjects. In our opinion comity does not require us to go that far."

435

■ ■ The doctrine that comity does not require an Illinois court to enforce a decree of a foreign country, nor does the full faith and credit clause of the Federal Constitution require an Illinois Court to recognize or enforce a decree of a foreign country, has been affirmed in Roberts v. Roberts, 11 Ill App2d 86, 92, 136 NE2d 590 (1956). In fact, it has been recognized in Illinois that a foreign country, in matters of matrimony, may issue judgments or decrees which will be unenforceable in this country. In Roth v. Roth, 104 Ill 35 (1882), the court said on page 44:

> ". . . for it is clearly settled by the decided weight of private international law, so called, that every State has the power to enact laws which will personally bind its citizens or subjects when sojourning in a foreign jurisdiction, provided such laws in terms profess to so bind them when thus circumstanced. It is true, such laws have no extra-territorial effect so as to authorize their enforcement in a foreign country, and may, therefore, so far as their execution is concerned, be said to remain dormant till the return of those violating them, when they will be enforced in the same manner, and to the same extent, as if their infraction had occurred within the State enacting them. . . ."

■ ■ It is axiomatic that there is no common law governing divorce. As was stated in Morrow v. Morrow, 15 Ill App2d 109, 145 NE2d 381 (1957), at pages 112–113:

> "There is no common law governing divorce. Resort to the courts for such purposes is a privilege existing solely by grant of the legislature, People ex rel. Christiansen v. Connell, 2 Ill2d 332, 340, McFarlin v. McFarlin, 384 Ill 428, 430. The power of the court is therefore limited by statutory provisions, Smith v. Smith, 334 Ill 370, 379, and the long-recognized rule

is that divorce laws will be strictly construed, Floberg v. Floberg, 358 Ill 626, 629."

The authorities cited by the plaintiff for the proposition that an action may be maintained in an Illinois court based upon a foreign country's judgment or decree for debt are distinguishable in that those authorities do not deal with matters of a matrimonial nature.

■ An action in debt is a common-law remedy. Illinois is a common-law state. However, the Legislature may do away with all of the common law or any part of it. In the instant case it has expressly acted and, we feel, has preempted the plaintiff's theory that he is suing in an action of debt and not upon a foreign judgment based upon a divorce in chancery. However, he bottoms his case upon the divorce decree. The enforcement of a foreign country's judgment or decree is governed by the Uniform Foreign Money-Judgments Recognition Act. (Ill Rev Stats 1965, c 77, §§ 121–129.) Since matrimonial matters are solely governed by statute, the pertinent provision of the aforesaid Statute, section 121(2), becomes paramount and it states:

"'Foreign judgment' means any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters."

It is noted, therefore, that the pertinent statute specifically excludes enforcement of a judgment for support of a foreign country in matrimonial or family matters.

■ To contend that the Legislature did not understand the meaning of section 121(2) is without merit, as it is presumed that when the Legislature passed the aforesaid statute, they did so with knowledge of the law prior to the enactment of the statute. It has been repeatedly held that, where statutes are enacted after judicial opinions are published, it must be presumed that the Legisla-

437

ture acted with knowledge of the prevailing case law. Illinois Power Co. v. City of Jacksonville, 18 Ill2d 618, 622, 165 NE2d 300 (1960); Heineman v. Hermann, 385 Ill 191, 196, 52 NE2d 263 (1944); Waesch v. Elgin, J. & E. Ry., 38 Ill App2d 56, 60, 186 NE2d 369 (1962).

 The contention of the defendant that the decree of the plaintiff must be registered is without merit as the statute does not include a judgment from a foreign country but only judgments of the United States or any State or Territory thereof. See both the preamble and section 1(a) of the Uniform Enforcement of Foreign Judgments Act. (Ill Rev Stats 1965, c 77, § 88(a).) Therefore, the plaintiff's cause of action is not barred because of failure to register the decree, but by reason of the aforesaid.

The judgment is therefore affirmed.

Judgment affirmed.

DAVIS, P. J. and ABRAHAMSON, J., concur.