JAMES PAUL DELANEY, Plaintiff, v. JAMES V. HAPPEL, Defendant (William Earl Harp *et al.*, Intervenors and Third–Party Plaintiffs-Appellants; Carl Stacey, Third–Party Defendant-Appellee).

First District (3rd Division)   No. 1—88—1039

Opinion filed June 28, 1989.

Regas, Frezados & Harp, of Chicago (R. Kymn Harp, of counsel), for appellants.

Richard A. Wohlleber and Stacy J. Krebs, both of Chapman & Cutler, of Chicago, and Jeffrey S. Nickloy, of Campbell Kyle Proffitt, of Carmel, Indiana, for appellee.

JUSTICE WHITE delivered the opinion of the court:

This is an appeal from a summary judgment entered in favor of the appellee.

In July 1982, plaintiff James Paul DeLaney entered into an "Intercreditor and Security Agreement" with defendant James Happel, appellee Carl Stacey, and several other individuals, granting each a security interest in DeLaney's art collection. The "Intercreditor and Security Agreement" stated that DeLaney was indebted to Stacy in the amount of $375,000, that part of this indebtedness was represented by a reimbursement agreement executed by DeLaney and Stacy, and that pursuant to the reimbursement agreement, Stacy would be repaid upon the sale of DeLaney's art collection.

On May 12, 1983, DeLaney filed suit against Happel seeking to cancel the contracts and agreements between them. DeLaney also sought to enjoin Happel from any action involving the art collection in which Happel purported to act as DeLaney's agent.

On May 23, the appellants, William Earl Harp and R.K. Harp Investment Corp. (Harps), filed a petition to intervene in DeLaney's action. They alleged that in November 1982, Stacy transferred his rights under the reimbursement agreement to Karen S. Hettenbach for $200,000, and that Hettenbach in turn assigned that interest to the Harps as collateral for a $200,000 debt she owed them.

The Harps were granted leave to intervene, and on September 30, 1983, they filed a third-party complaint against Stacy, James McQuade, and Donald Cobb. Several months earlier, the Harps had filed another action against Cobb and McQuade in the United District Court for the Northern District of Illinois. A default judgment for

$200,000 was entered against Cobb in the Federal action on September 6, 1983, and the Harps attempted to collect this judgment in a garnishment action against Stacy in which they alleged that Stacy had in his possession property belonging to Cobb.

In their third-party action against Stacy, Cobb, and McQuade, the Harps alleged that Stacy's interest in the reimbursement agreement was a security within the meaning of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1981, ch. 121½, par. 137.1 *et seq.*), which applies to all securities, including the transfer of any evidence of indebtedness, and that the transfer of Stacy's interest in the reimbursement agreement to Hettenbach was in violation of the Securities Law. The Harps alleged that the transfer to Hettenbach was voidable under section 13 of the Securities Law (Ill. Rev. Stat. 1981, ch. 121½, par. 137.13), because Stacy did not register the security, or deliver a prospectus describing it, prior to the sale. The Harps requested that the sale to Hettenbach be rescinded and that Stacy be required to pay them $200,000, plus interest.

Subsequently, Stacy moved for summary judgment on the Harps' third-party complaint. Stacy alleged that by filing their Federal court action against Cobb and McQuade, the Harps had made an election to sue as assignees of the reimbursement agreement and, therefore, they had lost the right and ability to seek rescission of the transfer of the agreement to Hettenbach. Stacy also alleged that the Harps had no standing under section 13 to sue for rescission of the transfer to Hettenbach.

The trial court found that by filing suit against Cobb and McQuade in Federal court, the Harps had made a binding election of remedies and, therefore, granted Stacy's motion for summary judgment.

In their appeal from the trial court's order granting summary judgment in favor of Stacy, the Harps argue that the trial court erred in ruling that the election of remedies doctrine was applicable. Stacy argues that the doctrine of election of remedies was properly applied and that the trial court correctly concluded that the Harps' attempt to rescind the transfer to Hettenbach was inconsistent with their reliance upon the transfer to obtain judgments in Federal court against Cobb and McQuade. In addition, Stacy reasserts his contention that the Harps lack standing under the Securities Law to bring an action seeking rescission of the transfer from Stacy to Hettenbach.

Section 5 of the Securities Law of 1953 provides that, with certain exceptions not appliable to the present case, all securities shall be registered prior to sale in this State. (Ill. Rev. Stat. 1981, ch. 121½,

par. 137.5.) Section 12 provides that it is a violation of the Securities Law to deliver to a purchaser any security required to be registered under section 5, unless accompanied or preceded by a prospectus describing the securities sold. (Ill. Rev. Stat. 1981, ch. 121½, par. 137.12.) Section 13(A) provides that any sale made in violation of the Securities Law shall be voidable at the election of the purchaser. (Ill. Rev. Stat. 1981, ch. 121½, par. 13(A).) Section 13(E) provides that the term "purchaser," as used in section 13, shall include the personal representative or representatives of the purchaser. Ill. Rev. Stat. 1981, ch. 121½, par. 13(E).

Stacy points out that the transaction which the Harps allege was in violation of sections 5 and 12 of the Securities Law is the transfer between Stacy and Hettenbach. Stacy argues that because the Harps themselves did not purchase the interest from Stacy, they have no standing under section 13(A) to seek rescission of the transfer to Hettenbach. We agree.

■■ Section 13(A) of the Illinois Securities Law of 1953 creates a right of action for rescission that was not previously available at common law. When a statute is in derogation of common law (*i.e.*, when it imposes duties and burdens or establishes rights or benefits not recognized by the common law), it must be strictly construed. (*In re W.W.* (1983), 97 Ill. 2d 53, 454 N.E.2d 207; *In re Prior* (1983), 116 Ill. App. 3d 666, 452 N.E.2d 676; *Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 387 N.E.2d 1118.) This principle of statutory construction applies even when the statute is remedial in nature. (*In re Prior* (1983), 116 Ill. App. 3d 666, 452 N.E.2d 676.) Where a statute is remedial in nature and is at the same time in derogation of common law, it will be strictly construed when determining what persons come within it. *Cedar Park Cemetery Association, Inc. v. Cooper* (1951), 408 Ill. 79, 96 N.E.2d 482; *Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 387 N.E.2d 1118.

■■ The Securities Law regulates the conduct of dealers in, and issuers, underwriters, and sellers of, securities. The Securities Law seeks to protect those who purchase securities from such dealers and sellers by imposing on the dealers and sellers certain requirements that must be complied with prior to a sale of securities. The Securities Law provides that when a dealer or seller fails to comply with the statutory requirements, the "purchaser" may elect to rescind the sale.

There is nothing in the Securities Law that indicates that the legislature intended to extend the right of rescission to assignees or transferees of the purchaser, and we believe that a strict reading of the statute requires the conclusion that an assignee of a purchaser

has no standing to sue for rescission under section 13(A).

Further support for this conclusion is found in the language of section 13(E) of the Securities Law. This section provides that the term "purchaser" as used in section 13 shall include the personal representative or representatives of the purchaser.

It is a fundamental principle of statutory construction that the enumeration of certain things in a statute implies the exclusion of all others. (*People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 414 N.E.2d 731; *In re Estate of Orzoff* (1983), 116 Ill. App. 3d 265, 452 N.E.2d 82.) Thus we find that the inclusion of section 13(E), specifying that the term "purchaser" includes personal representatives of the purchaser, implies an intent to limit the right to rescind to purchasers and their personal representatives.

The Harps contend, however, that the inclusion of section 13(E) supports a conclusion that a purchaser's rights under section 13(A) are assignable. The Harps note that the Illinois legislature is presumed to have been aware of the case law, regarding assignability of causes of actions, that was in existence when section 13 was enacted. (See *Nardi v. Segal* (1967), 90 Ill. App. 2d 432, 234 N.E.2d 805.) The Harps claim that in 1953, Illinois case law provided that actions which passed to the personal representative of a decedent creditor were assignable, and they argue that, therefore, the legislature's inclusion of section 13(E) indicates its intention to make section 13(A) actions for rescission assignable. This argument is without merit.

The Harps assert that the rule that causes of action which pass to a creditor's personal representative are assignable is found in *North Chicago Street R.R. Co. v. Ackley* (1897), 171 Ill. 100, 49 N.E. 222. The Harps' reliance on this case is misplaced.

The holding of the Illinois Supreme Court in *North Chicago Street R.R. Co. v. Ackley* was that causes of action for personal injury are not assignable. No question was raised concerning the assignability of actions that may be maintained by a personal representative, and we have been unable to find any Illinois case in which it was held that any action that passes to a personal representative is an assignable action.

In *Soderberg v. Gens* (N.D. Ill. 1987), 652 F. Supp. 560, the United States District Court for the Northern District of Illinois considered an issue similar to the one before this court. There, a corporation sold certain stock it had purchased in 1984 to the widow of its principal shareholder. The corporation also assigned to the widow all claims and causes of actions arising out of the negotiation, purchase, acquisition, or retention of the stock. Subsequently, the widow filed suit un-

der the Securities Exchange Act of 1934 and the Securities Act of 1933 seeking rescission of the corporation's 1984 purchase of the stock. The district court granted defendants' motion for summary judgment. The court noted that as a general rule the right to sue for rescission is a personal right which ordinarily is not assignable. The court found that there was no reason to think that Federal securities fraud actions should be an exception to the general rule.

■ Similarly, in the present case we see no reason to except actions brought under the Illinois Securities Law of 1953 from the general rule that the right to sue for rescission is not assignable. Accordingly, we find that the Harps were not the "purchasers" of the securities in question, and, therefore, they lack standing to bring an action for rescission under section 13(A) of the Securities Law. Because of our disposition of this issue, we need not reach the Harps' arguments concerning the applicability of the election of remedies doctrine.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and CERDA, JJ., concur.