Lauriat, Peter M., J.
This action arises from the purchase, by nine foreign hedge funds, of residential mortgage-backed securities. As assignee of the claims of the nine foreign hedge funds, the plaintiff, Cambridge Place Investment Management, Inc. (“CPIM”) seeks damages and/or rescission of the securities transactions from the defendants, who are underwriters, dealers, and depositors of the securities at issue. CPIM alleges that the defendants made false and/or misleading statements regarding the securities, in violation of the Massachusetts Uniform Securities Act (“MUSA”), G.L.c. 110A, §410.
The defendants have moved to dismiss the Complaint, pursuant to Mass.R.Civ.P. 12(b)(1), by reason of CPIM’s alleged lack of standing.[2] For the reasons discussed below, the defendants’ Joint Motion to Dismiss for Lack of Standing is denied.
BACKGROUND
On a motion to dismiss under Rule 12(b)(1) for lack of standing, the court considers the factual allegations of the complaint, as well as “documents and other materials outside the pleadings.” Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 710 (2004). CPIM is a Delaware corporation with its principal place of business in Concord, Massachu *164 setts. Compl. ¶ 11. It was “responsible for the sourcing, review, analysis, and purchase decisions for U.S. investments” made by its clients, nine foreign hedge funds.[3] Compl. fit 12, 83. The defendants are various investment firms, underwriters, dealers, and depositors.[4] Compl. ¶¶15-31. Based on applicable registration statements filed with the Securities and Exchange Commission, CPIM advised the nine foreign hedge funds to purchase the residential mortgage backed securities now at issue. Compl. ¶84.
The nine foreign hedge funds sustained substantial losses from their purchases of those securities. Kramer Affidavit at ¶14. CPIM and the nine foreign hedge funds discussed strategies to recoup their losses, and CPIM recommended that they assign their claims to CPIM so that it could bring an action in Massachusetts. CPIM concluded that state court, rather than federal court, “should result in a 10% to 20% increased in the expected value of recoveries.” Stickney Affidavit Exhibit 4 CPIM_00004926. It opined that state courts are more hostile to financial institutions than federal courts, state court judges are more hesitant to grant motions to dismiss than federal court judges, and the state court confers an advantage for local litigants. Stickney Affidavit Exhibit 4 CPIM_00004926. In addition, it noted the practicality of litigating the lawsuit locally and not subjecting the lawsuit to transfers among federal courts away from the Boston area. Stickney Affidavit Exhibit 4 CPIM_00004926. As a result, CPIM advised the nine foreign hedge funds to assign their claims to it so that it could pursue claims against the defendants in state court.
Between April 29, 2010 and July 6,2010, CPIM and its nine clients executed separate assignments and power-of-attorney agreements, by which CPIM was assigned all claims arising under the residential mortgage backed securities from its clients, in exchange for money up front and a percentage of its recovery in the litigation. After CPIM filed its first action (SUCV 2010-2741-BLS1) in this court on July 10, 2010, the defendants removed that case to federal court. While that case was pending in federal court, CPIM filed a second complaint (SUCV 11-0555-BLS1) in this court on February 11, 2011.[5] Following jurisdictional discovery, the U.S. District Court granted CPIM’s motion to remand the 2010 action to this court.[6] Cambridge Place Investment Mgmt., Inc. v. Morgan Stanley & Co., Inc., —F.Supp.2d—, 2011 WL 3679154 (D.Mass. Aug. 19, 2011) (Gorton, J.). On October 14, 2011, CPIM filed a First Amended Complaint in the 2010 action.
The defendants seek dismissal of the present actions on the ground that CPIM lacks standing under Mass.R.Civ.P. 12(b)(1). First, the defendants contend that the assignments of claims were done for an “improper purpose” — to collusively destroy federal diversity jurisdiction — which invalidates the assignments under Massachusetts law. See In re Scheffer, 450 B.R. 271, 275 (Bankr.D.Mass. 2011) (“An assignee who acquires a claim for an improper purpose should not be allowed to steps [sic] into the shoes of the assignor”). Second, the defendants argue that the remedies under MUSA are only available to the direct purchaser of the securities, and as assignee, CPIM lacks privily with the defendants necessary to bring an action under MUSA. Third, the defendants assert that CPIM lacks standing to seek the rescission of the securities because rescission is a personal right that is not assignable.
DISCUSSION
Standing is an issue of subject matter jurisdiction. See Doe v. The Governor, 381 Mass. 702, 705 (1980). “The question of standing is one of critical significance. From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of government.” Tax Equity Alliance v. Commissioner of Revenue, 423 Mass. 708, 715 (1996) (internal quotations and citations omitted). “To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury.” Slama v. Attorney General 384 Mass. 620, 624 (1981). A defendant contesting standing can present materials outside the pleadings that challenge the accuracy, but not the sufficiency, of the plaintiff s factual allegations relating to jurisdiction. Callahan, 441 Mass. at 710-11.
I.
The defendants first contend that the assignments to CPIM are invalid because they were done collusively to destroy federal diversity jurisdiction, which is an improper purpose that violates public policy. By invalidating the assignments, CPIM would not have a claim against the defendants and would lack standing to bring these actions.
The defendants assert that in the months prior to the filing of the first lawsuit, the nine foreign hedge funds assigned their claims against the defendants to CPIM, but that common law prohibits this type of assignment, known as champerty.[7] Saladini v. Righellis, 426 Mass. 231, 233 (1997). “More recently the doctrine has been viewed as a check on frivolous or unnecessary litigation, or a mechanism to encourage the settlement of disputes without recourse to litigation.” Id. at 234. While the Supreme Judicial Court abrogated the champerty doctrine in Saladini assignments of claims are still subject to court scrutiny and are assessed on a case-by-case basis. See, e.g., Otis v. Arbella Mut. Ins. Co., 2003 WL 21385792, *4 (Mass.Super. Apr. 18, 2003) [16 Mass. L. Rptr. 227].
Even if the assignments were made collusively to destroy federal diversity jurisdiction, that, in itself, does not invalidate them. The U.S. District Court found that “[t]here is abundant evidence that, in fact, *165 keeping the litigation in state court was the predominant reason and motivation for the assignments.” Morgan Stanley, 2011 WL at *2. While the court accepts this finding, and while the defendants stress that CPIM effectuated the assignment solely for the purpose of inhibiting the lawsuit from being prosecuted in federal court, that by itself is insufficient to invalidate the assignments. As the Supreme Court noted, “this Court several times held that an assignment could be ‘improperly or collusively made’ even though binding under state law.” Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 829 (1969) (holding that the federal district court lacked jurisdiction to hear the case because an assignment was collusively made to destroy jurisdiction). In addition, federal courts “do not require a finding of fraud or deceit, collusion with the opposing party, or impropriety in the sense of indecorum or indecency,” to determine that the court lacks jurisdiction under 28 U.S.C. §1359. Gilbert v. Wills, 834 F.2d 935, 937 (11th Cir. 1987). The U.S. District Court’s determination in the present case that the assignments were improperly made to CPIM only affects their validity under federal jurisdictional law, and does not affect their validity under state law. The defendants must present facts beyond this jurisdictional issue that warrant this court invalidating the assignments.
The Massachusetts cases that the defendants cite are readily distinguishable, and do not lend support to the their contention that the assignments were made for an improper purpose that violates public policy. In Saladini, the plaintiff and defendant agreed to have the plaintiff advance funds to the defendant to finance a lawsuit, and that the plaintiff would receive 50% of any net recovery after payment of attorneys fees. 426 Mass. at 232. The Supreme Judicial Court held that the agreement was valid.[8] Id. at 236-37. Otis dealt with an assignment through the lens of judicial estoppel. Following a substantial recoveiy by the plaintiff in a personal injuiy action against the defendant, the defendant assigned his own legal malpractice claim to the plaintiff. Otis, 2003 WL at *1. In the subsequent legal malpractice action, the plaintiff argued that the defendant’s prior lawyer committed malpractice because the plaintiff was comparatively negligent and should not have recovered so much, directly contradicting his position in the underlying lawsuit. Id. at *3. The court granted the defendants summary judgment under judicial estoppel principles.
Finally, the defendants cite a 1971 Supreme Judicial Court decision that warned against “unhealthy forum shopping by bargain hunting litigants.” United Tool and Ind. Supply Co., Inc. v. Torrisi, 359 Mass. 197, 199 (1971). In that case, the plaintiffbrought an action in equity in the Probate Court, under the Probate Court’s general equity jurisdiction, because the Probate Court allowed for the recoveiy of attorneys fees while the Superior Court did not. Id. at 198-99. Torrisis cautioning against forum shopping does not lend support to the defendants’ contention that the assignments violate Massachusetts public policy. This court will not disturb the U.S. District Court’s determination that the assignments were made for the predominant purpose of destroying federal diversity jurisdiction. However, the defendants cannot show that this collusive action, by itself, renders the assignments void as against public policy. In the absence of additional facts to invalidate the assignments under state law, the court concludes that the assignments properly place CPIM in the shoes of the nine foreign hedge ftinds.[9]
II.
The defendants next assert that CPIM, as assignee, cannot bring an action under MUSA because that statute’s remedies are limited to purchasers. MUSA limits a seller’s liability “to the person buying the security from him.” G.L.c. 110A, §410(a)(2). According to the defendants, since CPIM did not purchase the securities from them, it is not in privily with them and therefore is not entitled to MUSA’s remedies. In response, CPIM contends that the defendants’ construction of the statute is overly narrow. Alternatively, it claims that as the investment advisor to the nine foreign hedge funds, it stands in the shoes of its clients and is therefore a purchaser.
The defendants present dicta interpreting MUSA to the effect that CPIM cannot bring an action under §410(a)(2). MUSA “aims, of course, to compensate the buyer for a loss . . . Thus, the act provides strong protections for a buyer who received misleading information from a seller of securities.” Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 51-52 (2004). Because a MUSA plaintiff is provided with substantial protections and has less of a burden than under a theoiy of common-law fraud, see id. at 52, the defendants contend that MUSA’s protections do not extend to an assignee of a buyer. In Abelson v. Strong, 644 F.Sup. 524, 532 (D.Mass. 1986), the court noted in dictum that “[a] direct purchaser-seller relationship is required by §410(a)(2) but is not necessary at common law,” but the court in that case was addressing a statute of limitations issue, rather than an assignee’s right to pursue a MUSA claim against a seller.
The defendants do present one analogous case where an intermediate appellate court in Illinois, faced with a securities action by an assignee of a purchaser, determined that the plaintiff lacked standing under Illinois securities law. Delaney v. Happel, 542 N.E.2d 46, 47 (Ill.App.Ct. 1989). The relevant Illinois statute provided for a purchaser’s right to rescind the sale of securities made in violation of the Illinois securities law. Id. at 48. Because the statute “creates a right of action for rescission that was not previously available at common law ... it will be strictly construed when determining what persons come within it.” Id. The court held that an assignee was not entitled to rescind the sale of a security. Id.
*166 However, in Pinter v. Dahl, 486 U.S. 622 (1988), the Supreme Court addressed whether an investor, who solicited other investors, was treated as a “seller” within the meaning of the federal Securities Act. While the Supreme Court held that the investor was not a “seller” within the meaning of the statute, it noted:
[w]hen rescission is predicated on fraud, rather than based on contract theory, privity is not essential . . . The Court, in the context of [federal securities statute] §12(2) has noted that Congress enabled investors to demand rescission upon tender of the securities to the defendant, in part because of the additional measure of deterrence provided by rescission as compared to a purely compensatory measure of damages.
Id. at 647 n.23.[10] This interpretation of the Securities Act belies the defendants’ assertion that CPIM’s lack of privily is fatal to its assertion of standing in the present action. At this stage, the court is unwilling to conclude that an assignee cannot bring a claim under §410(a)(2).
Alternatively, a Massachusetts federal district court has held that an investment advisor with discretion qualifies as a purchaser under federal securities law. In re Sonus Networks Inc. Sec. Litig., 247 F.R.D. 244, 245-46 (D.Mass. 2007). There, an investment advisor sought to represent a plaintiff class, including itself, who had purchased securities from an electronic networking corporation, in an action alleging securities fraud. After concluding that the investment advisor had constitutional standing under Article III, it determined that it also had standing as a “purchaser” under the federal Securities Act. Id. at 249-51. Noting how jurisdictions have applied different standards to the issue, the court adopted a “functional test” based on the decision-making authority that the investment advisor possessed. Id. at 251. “[F]rom this approach, as long as the investment advisor has discretion in determining what securities to buy and sell, it qualifies as a purchaser with standing to bring a securities fraud action.” Id. at 250-51.
Under these circumstances, the Complaint makes sufficient factual allegations that CPIM, as investment advisor for the nine foreign hedge funds, had discretion to determine what securities to buy and sell. CPIM alleges that it was “responsible for the sourcing, review, analysis, and purchase decisions for U.S. investments” for the nine foreign hedge funds. Compl. ¶¶12, 83. As CPIM alleges that it had discretion in the determining what securities that the nine foreign hedge funds would purchase, it has standing to pursue its claims against the defendants. Accordingly, the court treats CPIM as “the person buying the security” from the defendants under G.L.c. 110A, §410(a)(2).
III.
The defendants’ final argument is that rescission is a personal right, and that CPIM, as assignee, lacks standing to seek rescission. Because rescission is an equitable claim designed to place the parties in the positions they had been in prior to the transaction, the defendants contend that an assignee is not entitled to that right. In addition, Massachusetts courts do not allow the assignment of “personal” claims. See Rice u. Stone, 83 Mass. 566, 568-69 (1861). The defendant argue that this is a personal claim that the nine foreign hedge funds cannot assign.[11]
Massachusetts, however, has recognized the availability of rescission as a remedy for an assignee in a non-securities action. Gillis v. Bonelli-Adams Co., 284 Mass. 176, 181 (1933) (“There is no impropriety in joining the cause of action held by the plaintiff in his own right with the one acquired by him by assignment. The plaintiff is. able to sue in his own name on the claim assigned to him”). See also, In re Bell & Beckwith, 89 B.R. at 638 (trustee stood in the shoes of a purchaser as an assignee, and court noted that “[c]ourts which have previously considered cases involving the assignability of causes of action under state Blue Sky Laws have generally allowed assignment").
The court is unwilling to conclude that CPIM’s claim is “personal” and not subject to assignment. As noted, supra, at this preliminary stage, the court considers CPIM a purchaser under §410(a)(2). Accordingly, CPIM is entitled to assert all available statutory remedies, including rescission.
ORDER
For the foregoing reasons, the defendants’ Joint Motion to Dismiss for Lack of Standing is DENIED.

 Initially, certain defendants considered challenging the court’s personal jurisdiction over them, but they have now waived that issue.

 These nine foreign hedge funds are organized under the laws of Guernsey, the Cayman Islands, and Ireland. Kramer Affidavit at ¶8.

 CPIM settled with one defendant, Aegis Asset Backed Funding Corporation. Kramer Affidavit at ¶31.

 “[T]he allegations in each Complaint are substantively identical, and . . . the numbered paragraphs in each Complaint are consistent.” Kramer Affidavit at ¶2.

 The U.S. District Court (Gorton, J.) first found that the assignments of claims between the nine foreign hedge funds and CPIM were collusively made to destroy federal diversity jurisdiction. Id. at *1-2. Under 28 U.S.C. §1359, a federal court lacks jurisdiction when parties to the case are improperly or collusively joined in order to create federal jurisdiction. After disregarding the assignments, the court determined that there was not complete diversity between the nine foreign hedge funds and all defendants, as some defendants were also foreign entities. Id. at *2. As a result, the action was remanded to this court.

 Champerty is based on the assignment of a claim to a party without an interest in the litigation. CPIM alleges that it acted as an investment advisor to the nine foreign hedge funds, so it was not entirely without an interest prior to the assignment.

 It noted that in assessing this type of agreement, “(w]e shall be guided in our analysis by a rule of what is fair and reasonable, looking to all of the circumstances at the time the arrangement is made to determine whether the agreement should be set aside or modified." Id. at 236-37.

 The defendants are concerned that the nine foreign hedge funds are shielded from discovery under the Massachusetts Rules of Civil Procedure. While the court will monitor this moving forward, it does not warrant dismissing the lawsuit at the present time.

 “We look to Federal decisions under § 12(2), as well as to the plain language of the statute and decisions to our appellate courts, for our interpretation of §410(a)(2).” Marram, 442 Mass. at 51.

 The defendants also contend that the nine foreign hedge funds have not transferred the actual securities to CPIM, so CPIM will not be able to tender them to the defendants as a prerequisite under §410(a)(2). In response, CPIM notes that it seeks damages for a majority of the securities, which the nine foreign hedge funds sold, and that the remaining securities are worthless. Kramer Affidavit at ¶¶36-37. A party is not required to tender a worthless security in order to obtain damages. See In re Leary, 241 B.R. 266, 270 (Bankr.D.Mass. 1999); In re Bell & Beckwith, 89 B.R. 632, 638 (Bankr.N.D. Ohio 1988).