106 Ill. App.3d 667 (1982)
435 N.E.2d 1357
In re APPLICATION OF WILLIAM G. BEELER.  (WILLIAM G. BEELER, Petitioner-Appellee,
v.
JAMES BOYLAN, McLean County Treasurer, Respondent-Appellant.
No. 17485.
Illinois Appellate Court  Fourth District.
Opinion filed May 19, 1982.
Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Keith P. Vanden Dooren, both of State's Attorneys Appellate Service Commission, of counsel), for appellant.
Fleming, Messman & O'Connor, of Bloomington (C. Daniel Messman and Wayne P. Coffelt, of counsel), for appellee.
Judgment affirmed.
JUSTICE TRAPP delivered the opinion of the court:
Respondent appeals from the order of the circuit court granting the refund of a portion of real estate taxes assessed upon the value of two grain dryers and paid under protest, as provided in section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 675).
*668 At issue is the taxability under section 18 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 499) of two Behlem Model 850 grain dryers owned and used by petitioner in his farming operation in McLean County. At the hearing on petitioner's objection to the tax, he testified that he had been farming since 1968 and had purchased the grain dryers in 1979. Prior to the purchase he had leased this type of dryer.
The dryers are approximately 12 feet in height, 19 feet long, weigh 12,000 pounds each, and are used for drying grain produced in petitioner's farming operations. Petitioner testified that the dryers were sold with wheels, an axle, and a tongue, and could be moved with a pickup truck. Originally, the dryers had been placed upon wooden railroad ties on petitioner's farm but were later mounted on a "floating" concrete slab to enable spilled grain to be cleaned easily and prevent movement during high winds. A "floating slab" is described as concrete spread upon the ground without footing or excavation of the ground.
Petitioner testified that similar grain dryers had previously been moved from farm to farm as the demand arose, but that as presently used the dryers would remain in place, except when repairs were necessary or in the event the dryers would be sold. To move the dryers, they must be elevated sufficiently to attach the wheels, and axle, and the electrical and gas supplies must be disconnected. The electricity can be detached by uncoupling three wires, and once disconnected, the dryer can be moved with a pickup truck. According to Arthur Nafziger, a witness for respondent, the dryers had an estimated life of five to eight years.
The trial court granted the relief requested in the petition concluding that "[t]he essential character of the dryers is such that they are large useful pieces of portable equipment that do not have the permanency associated with real property or improvements thereto." It is respondent's contention that this finding is against the manifest weight of the evidence.
Taxation of petitioner's grain dryers is predicated on section 18 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 499), which imposes a tax on "[a]ll real property in this State," unless exempted. Under section 1(13) of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 482(13)), real property is defined as:
"(13) Real Property  Real Estate  Land  Tract  Lot  Not only the land itself, whether laid out in town or city lots, or otherwise, with all things contained therein, but also all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind, thereon, and all rights and privileges belonging or in anywise pertaining thereto, except where the same may be otherwise denominated by this Act. Included therein is any vehicle or similar portable structure used or so constructed as to permit its being *669 used as a dwelling place for one or more persons, if such structure is resting in whole on a permanent foundation."
The respondent, relying on Ayrshire Coal Co. v. Property Tax Appeal Board (1974), 19 Ill. App.3d 41, 310 N.E.2d 667; Cherry Bowl, Inc. v. Illinois Property Tax Appeal Board (1981), 100 Ill. App.3d 326, 426 N.E.2d 618, and Arnold v. Crowder (1876), 81 Ill. 56, contends that the grain dryers are realty and subject to taxation under section 18 of the Revenue Act.
In Ayrshire, certain items of coal extraction equipment including coal conveyors, crushing units, and other large property used in coal processing, were classified as real property and taxed as such. The equipment was necessary to the coal extraction process conducted on the land and had been bolted onto concrete piers covering a large surface area, though it could have been moved without damage to the realty. The appellate court reversed the trial court's order which had found the property to be personally and concluded that the property was part of the real estate for tax purposes, despite the fact that the property had been assessed as personalty for the last five years. The court stated:
"Many authorities take the position that any and all machinery essential to the proper functioning of a plant, mill, or similar manufacturing is a fixture, or is at least so presumed to be, irrespective of the manner in which it is annexed to the realty and even though it is not attached thereto at all. This view is sometimes referred to as the `integrated industrial plant' doctrine and represents the modern trend of decisions. [Citations.]
* * *
Where property is adapted to the use to which the realty is devoted the use thereof in such manner furnishes such strong evidence of intent to make it a part of the freehold as not to be overcome by bookkeeping practices. [Citation.]" 19 Ill. App.3d 41, 45-46, 310 N.E.2d 667, 671.
A more recent case considering the definition of real property for purposes of taxation under section 18 of the Revenue Act of 1939 is Cherry Bowl. At issue in Cherry Bowl was the taxability of automatic pinsetters installed in plaintiff's bowling alley. In that case, the court concluded that the pinsetters were properly taxed as realty and mentioned several facts to buttress this finding: (1) the pinsetters were adapted to the use to which the building was designed; (2) the pinsetters had a useful life of 20 to 50 years; and (3) plaintiff had intended to use them while he operated the establishment.
Though these cases did not explicitly state what the proper test would be to determine whether property is real estate under section 1(13), *670 two different approaches were mentioned and formed the basis of the courts' reasoning: the intention test and the integrated industrial plant doctrine.
Under the intention test, three criteria are applied to evaluate whether property is personalty or realty, or more properly, whether an item has become a fixture. First, the property must be annexed to the realty or to something appurtenant thereto; second, the property must be applied to the use or purpose to which that part of the realty, with which it is connected, is appropriated; and finally, the party making the annexation must intend to make a permanent accession to the freehold. See Sword v. Low (1887), 122 Ill. 487, 496, 13 N.E. 826, 828; 1 G. Thompson, Modern Law of Real Property sec. 56, at 187 (1980); 5 American Law of Property sec. 19.3, at 16 (1952).
Application of this test to the facts at bar clearly produces the result reached by the trial court. While there is no dispute that the property rested upon a concrete slab, and was applied to the use to which the property was put, the evidence at the hearing indicated that the annexation was not designed as a permanent and valuable improvement to the realty.
Petitioner testified that he had traded previous grain dryers in for newer and more appropriate equipment and even respondent's witness estimated that the property had an estimated lifetime of only five to eight years. As the trial court reasoned: "Petitioner may well intend to utilize portable grain dryers for the remainder of his working life  but those grain dryers may be larger or smaller than these, or more or fewer in number, or newer and better. Or, he may choose to stop using portable grain dryers altogether and sell the ones he owns." The use of the dryers was not an essential step to the function of farming, but was one of several means to handle harvested grain. These facts are in direct contrast to Cherry Bowl where the court noted that the property was intended to be used by the taxpayer the entire time he owned the business, and the property had a lifetime of 20 to 50 years.
In Kelly v. Austin (1867), 46 Ill. 156, an action was brought by a mortgagee, following foreclosure of a real estate mortgage, to restrain the removal of a carpenter shop which had been erected from rough materials on the mortgaged premises by the defendant-mortgagor. In that case, the shop was laid upon a brick foundation and used by the defendant in his carpentry business. Though the mortgagee contended that the building became a permanent fixture or improvement passing with the land upon foreclosure, the court concluded that the building was temporary in character and not permanently affixed so as to pass to the mortgagee. The court, in language applicable to the facts at bar, said:

*671 "Had the building been of a permanent character, or had it been placed there with the intention of permanently remaining, then it could not be severed without the consent of the mortgagee. Or had it been placed on the lot by the mortgagor, with his own means, it might have presented a different question. But from the character of the structure, and the purpose for which it was employed, it would seem that it was not designed for any other than a temporary use, and to be removed from the lot when the object of its erection was terminated." 46 Ill. 156, 158-59.)
Likewise, at bar, the fact that plaintiff had contemplated trading the equipment every five to seven years, the estimated life of the grain dryers, indicates that the property was not of a permanent nature, and thus was not taxable as realty.
The present factual situation is thus much different from that presented in Arnold, relied upon by respondent. In Arnold, an excavation of two feet was made, a brick foundation was laid in the excavation, and agricultural scales for weighing stock and grain were attached to the brick foundation. The scales were erected not only for the mortgagor's use, but were designed as a source of profit by the use of others. Following a real estate mortgage foreclosure, the mortgagor brought an action in trover to recover the scales from the mortgagee who had purchased the land at the sale. The court concluded that the scales were realty and passed at the sale to the purchaser, stating:
"He fixed it to the soil, so far as the evidence shows, for a permanent purpose, as he might never have been deprived of the ownership of the premises." 81 Ill. 56, 59.)
This set of circumstances showing in Arnold an intent to make a permanent and valuable improvement is inapposite to the factual circumstances at bar.
The second approach, useful in determining whether an item of property is realty or personalty, has been described as the "integrated industrial doctrine." Under this test, all machinery of a factory or plant necessary for its operation as a complete going concern, is considered to be part of the freehold. 35 Am.Jur.2d Fixtures sec. 11-13, at 707-09 (1967); Ayrshire; Guardian Life Insurance Co. v. Swanson (1936), 286 Ill. App. 278, 3 N.E.2d 324.
In Guardian Life Insurance Co., the question arose between a chattel mortgagee and a real estate mortgagee as to the characterization of 20 electrical refrigerators installed in a furnished apartment building and attached only by means of an electrical outlet. The trial court had found that the items were personal property, but on appeal the court reversed, finding that the items were an integral and indispensable part of the *672 furnished building which was adapted for rental purposes. The court minimized the degree of actual annexation of the refrigerators and emphasized the properties' indispensable character to the purposes for which the building was erected and used. The court, quoting from State ex rel. Gisholt Machine Co. v. Norsman (1918), 168 Wis. 442, 169 N.W. 429, noted:
"`The annexation referred to may be either (a) actual or (b) constructive. A chattel is said to be constructively annexed when it is a necessary indispensable integral part of the plant with which it is connected.
* * *
It is considered that what makes a fixture attached by a belt or wire or pipe a part of the realty is the use to which it is put rather than the mere physical attachment. If it is a necessary integral part of the plant, as between mortgagor and mortgagee it is considered realty. * * *.'" (286 Ill. App. 278, 287-88, 3 N.E.2d 324, 328.)
Applying this analysis to the facts in Guardian Life Insurance Co., the court then went on to conclude that the electrical refrigerators were recognized as essential equipment in a modern furnished apartment building, and concluded that such refrigerators were a part of the realty and passed to the mortgagee.
The integrated industrial doctrine, though seemingly different from the above intention test, is just an extension of the second and third elements of the intention test requiring use in connection with the use to which the land is put, and an intent to permanently improve the real estate. Under the industrial doctrine, however, physical annexation is subordinated to the interrelationship between the disputed piece of property and the use of the real estate. The higher the degree of a relationship between the contested property and the uses of the realty, the more assuredly it can be said that the property is a part of the realty. Just as in Guardian Life Insurance Co. where the refrigerators were indispensable to the business of renting furnished apartments, so the property is treated for all intents and purposes as a part of the apartment building passing to the mortgagee. Accord, Ayrshire.
Application of this doctrine to the case at bar favors the result reached by the trial court, since it is clear from the testimony of both petitioner and respondent's witness that the grain dryers were not indispensable to petitioner's farming operations, but merely one of several means to handle harvested grain. Though the dryers did provide a choice to petitioner to process his grain operations, it is apparent that the dryers were in nowise necessary to the farming operation.
Accordingly, the decision of the trial court granting petitioner a *673 refund of taxes paid under protest, and finding that the grain dryers were not realty but personalty, is affirmed.
Affirmed.
GREEN, P.J., and WEBBER, J., concur.