THE LEE COUNTY BOARD OF REVIEW, Petitioner-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Respondents-Appellees.

Second District    No. 2—95—0529

Opinion filed March 28, 1996.

712

Daniel A. Fish, State's Attorney, of Dixon (Ronald M. Jacobson, Assistant State's Attorney, of counsel), for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Barbara E. Pitts and Jessie A. Wang-Grimm, Assistant Attorneys General, of counsel), for respondent Illinois Property Tax Appeal Board.

David P. De Yoe, of McDermott, Will & Emery, and Donald T. Rubin, of Buyer & Rubin, both of Chicago, for other respondents.

JUSTICE GEIGER delivered the opinion of the court:

The petitioner, the Lee County Board of Review (the County), appeals from a decision of the Property Tax Appeal Board (PTAB) granting the taxpayers' motion for summary judgment. The issue on appeal is whether the PTAB correctly found that the County incorrectly classified and assessed the taxpayers' trailers as real property for the 1991 tax year. We affirm.

Woodhaven Lakes is a recreational campground located in Lee County, Illinois. At Woodhaven Lakes, there are approximately 6,154 lots, individually owned. Each lot owner at Woodhaven Lakes owns one or more lots and a trailer.

All of the trailers at Woodhaven Lakes are portable. They have wheels attached to their frames, and neither the wheels nor the axles are removed from the trailers. When a trailer is to be moved, the utility lines are unhooked, the tongue, which is usually stored underneath the trailer, is replaced, the tires are reattached to the wheels, and the unit is raised on a jack to remove the support elements.

The trailers rest on supports, consisting of various materials, such as concrete blocks, timbers, 2-inch by 12-inch boards, or trailer jacks. The majority of trailers have supports that rest on the ground. Some supports rest on small wooden bases, approximately 12 inches by 12 inches. Other supports sit on concrete pads that are three to four inches thick, but may be as much as eight inches thick. The concrete pads do not extend below the frost line.

Prior to 1991, the Lee County assessor's office had not assessed the trailers at Woodhaven Lakes as real or personal property; nor had the assessor's office assessed a mobile home privilege tax against the owners for the trailers. In the tax years prior to 1991, the assessor's office assessed only the Woodhaven Lakes land as real property.

In 1991, the assessor's office decided to assess the trailers as permanent improvements to the land. On or about September 26, 1991, the assessor's office issued a "Notice of Proposed Assessed Valuation" to all of the lot owners at Woodhaven Lakes, declaring that for the 1991 tax year, the trailer structures on the lots, as well as any additions to those structures, would be assessed along with the land as real property. The County approved the increase in the assessed values of the lots.

On or about December 23, 1991, 230 of the Woodhaven Lakes lot owners (taxpayers), represented by attorney David P. De Yoe, filed an appeal to the PTAB from the County's assessments for the 1991 tax year. In addition, 113 other Woodhaven Lakes lot owners (taxpayers), represented by attorney Donald Rubin, filed an appeal from the 1991 assessments.

Between the summer of 1991 and the spring of 1993, the taxpayers and the County filed briefs with the PTAB. On April 5, 1993, after a request for consolidation of their clients' appeals, attorneys De Yoe and Rubin filed a joint motion for partial summary judgment.

Specifically, the taxpayers' motion sought to have summary judgment granted on the issue of whether the trailers were properly classified and assessed by the County as real property. The taxpayers argued that their trailers were not taxable as real property under the Revenue Act of 1939 (the Revenue Act) (Ill. Rev. Stat. 1991, ch. 120, par. 482 *et seq.*) because the trailers did not rest on permanent foundations and, therefore, did not fall within the Revenue Act's definition of real property. The taxpayers argued that their trailers instead met the statutory definition of a mobile home, pursuant to section 1 of the Mobile Home Local Services Tax Act (Ill. Rev. Stat. 1991, ch. 120, par. 1201 *et seq.*), and that their trailers could only be subject to the privilege tax set forth under that provision.

Several documents were submitted in support of the taxpayers'

motion for summary judgment. First, there were affidavits from each appealing taxpayer, stating that "none of the structures or other improvements located on this property as of January 1, 1991[,] is resting in whole or in part on a permanent foundation (i.e., a foundation which extends below the frost line)" and that "since the day [the taxpayer] purchased or constructed the structures or other improvements located on the property until January 1, 1991, the structures and improvements have not been taxed as real estate."

The taxpayers also attached an affidavit from Sharon Templeton, the owner of 100 RV Services, Inc., a company engaged in the business of selling trailers. Templeton stated in her affidavit that she had examined 130 lots that were the subject of the appeal. She did not observe any lots on which the trailers had foundations extending below the frost line; nor did she have knowledge of any other Woodhaven Lakes lots on which the foundations extended below the frost line.

Finally, the taxpayers submitted a March 16, 1990, letter and an explanatory guide from the Department of Revenue, both of which set forth the process for assessing mobile homes under the Mobile Home Local Services Tax Act. These documents had been sent by the Department of Revenue to the Lee County supervisor of assessments, in response to the County's inquiry regarding the procedure for taxing mobile homes. The guide, entitled "Assessing Mobile Homes," distinguished between portable structures that qualify for taxation under the Mobile Home Local Services Tax Act and structures that rest on permanent foundations and are to be taxed as real property.

On September 9, 1993, the parties convened at a prehearing conference before the PTAB. At this conference, the parties entered into a prehearing agreement. According to the agreement, the County submitted as evidence copies of property record cards, photographs, fact sheets, and physical descriptions of each lot in question. The agreement used the term "primary structure" to refer to the Woodhaven Lakes trailers and the manufactured room additions to the trailers. The term "ancillary structure" referred to any unattached room additions, porches, decks, and screened enclosures located on the lots.

The agreement additionally stated: "It is further agreed by the parties that the primary structures, as defined above, are resting on the ground or on gravel or concrete pads and support is provided by concrete blocks and/or wood beams and are hooked up to one or more of the following utilities: water, sewer, and electricity."

In terms of the land assessment amounts, the parties attached to the agreement a list of current assessments and proposed revised as-

sessments for the parcels under appeal. The parties agreed that the land assessments would be revised to reflect the attached proposal.

Furthermore, the parties agreed that the assessed values and classification of the ancillary structures as real property were correct for the 1991 tax year. The agreement stated:

> "[T]he only remaining issue is the legality of the assessments placed upon the 'primary structures' *** which are located on each parcel. The individual assessed values placed upon those 'primary structures' by the [County] are not at issue, should they be found to be assessable as real estate."

The parties additionally agreed that the appeals in the case should be consolidated.

On September 30, 1993, the County filed a response to the taxpayers' motion for summary judgment. The essence of the County's response was that the trailers at Woodhaven Lakes did not meet the statutory definition of "mobile home" under section 1 of the Mobile Home Local Services Tax Act, but that the trailers did rest on permanent foundations so as to be taxable as real property under section 1(13) of the Revenue Act (Ill. Rev. Stat. 1991, ch. 120, par. 482(13)). On October 18, 1993, the taxpayers filed a reply memorandum.

On November 9, 1993, the PTAB issued a letter to the parties, granting the taxpayers' motion for partial summary judgment. On June 21, 1994, both parties filed a joint motion to proceed without a hearing, with an attached list of parcels. In this motion, the parties indicated that the attached list represented the reduced assessments as revised pursuant to the prehearing agreement. The parties requested that the PTAB enter a final and appealable decision in the case, detailing the findings of fact and conclusions of law upon which the grant of summary judgment was based.

On February 22, 1995, the PTAB issued a decision setting forth fact findings and conclusions of law regarding the Woodhaven Lakes development. A list of parcels was attached to the decision. On March 7, 1995, attorney Rubin sent a letter to the PTAB, stating that the February 22, 1995, decision included only the schedule of properties belonging to the taxpayers represented by attorney De Yoe. Rubin requested that the PTAB attach to its decision the previously omitted schedules regarding his clients' properties.

As a consequence of Rubin's letter, on March 29, 1995, the PTAB entered an amended final administrative decision. This decision was identical to the one issued on February 22, 1995, but included a complete schedule of parcels.

The PTAB found that the County's assessment of the Woodhaven

Lakes lots was incorrect and that the trailers should not be assessed as real property. On May 3, 1995, the County filed a petition for administrative review directly with this court.

The issue on appeal is whether the PTAB properly determined that the Woodhaven Lakes trailers should not be assessed as real property under the Revenue Act. There are two statutory inquiries that must be made in determining the propriety of the PTAB's decision.

First, section 18.1 of the Revenue Act provides:

"No property lawfully assessed and taxed as personal property under this Act prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as real property subject to assessment and taxation under this Act after January 1, 1979. No property lawfully assessed and taxed as real property under this Act prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as personal property subject to assessment and taxation under this Act after January 1, 1979." Ill. Rev. Stat. 1991, ch. 120, par. 499.1.

The taxpayer has the burden of proving that property is exempt under this provision and, thus, of proving that such property was lawfully assessed and taxed as personal property prior to January 1, 1979. *Trahraeg Holding Corp. v. Property Tax Appeal Board*, 204 Ill. App. 3d 41, 43 (1990).

In the present case, the PTAB determined that the trailers were not assessed as either personal property or as real property prior to January 1, 1979. The County had presented evidence in its brief to the PTAB that similar types of trailers in Lee County, outside of Woodhaven Lakes, were assessed as real property in the past. However, the PTAB stated in its decision that this evidence was insufficient to show a controlling classification of the property at Woodhaven Lakes as real estate for two reasons.

First, the PTAB could not ascertain whether the similar trailers, outside of Woodhaven Lakes, were first assessed as real property by Lee County prior to 1979. Second, the PTAB found that even if the property outside of Woodhaven Lakes had a controlling pre-1979 classification as real property, there was no indication from the evidence that such property was comparable to the Woodhaven Lakes trailers. The PTAB stated:

"[T]here was no showing of comparability between the disputed items at Woodhaven Lakes and the property located elsewhere in the county that were apparently assessed as realty. The record cards and exhibits simply do not bear this out. Absent substantive

evidence to the contrary, the Board can not assume all the properties are similar."

On appeal, the County argues that it presented before the PTAB evidence of similar structures in the County, outside of Woodhaven Lakes, that were taxed as real property. This evidence consists of property record cards that document 13 trailer structures located on leased property in Lee County. The County argues that these structures had pre-1979 assessment treatment as real property and that, because they are sufficiently similar to the Woodhaven Lakes trailers, the Revenue Act requires taxation of the trailers at issue. We disagree.

An administrative agency's findings and conclusions on questions of fact are *prima facie* true and correct. 735 ILCS 5/3—110 (West 1994). They will not be disturbed on review unless they are contrary to the manifest weight of the evidence, that is, unless an opposite conclusion is clearly evident. *Lake County Board of Review v. Property Tax Appeal Board*, 192 Ill. App. 3d 605, 613 (1989).

■ In the present case, the PTAB's finding that there was no indication of pre-1979 assessment treatment of the Woodhaven Lakes trailers was not against the manifest weight of the evidence. Contrary to the County's assertion, the record cards provided by the County do not indicate the pre-1979 classification for all of the structures that the County claims to be similar to those at Woodhaven Lakes. Some of the property cards fail to reflect the assessment history prior to the mid-1980s.

Moreover, as the PTAB properly noted, there is no evidence in the record that these properties are in fact of "like kind" to the Woodhaven Lakes trailers. The County contends that the property record cards and photographs demonstrate the requisite similarity. However, the PTAB found this evidence to be insufficient evidence of comparability. Indeed, there is no evidence from these records to indicate the construction method of these structures or their foundation types.

■ We will now address the PTAB's finding that the Woodhaven Lakes trailers did not rest on "permanent foundations" within the meaning of the Revenue Act. At issue is the construction of section 1(13) of the Revenue Act, which includes within the definition of real property "any vehicle or similar portable structure used or so constructed as to permit its being used as a dwelling place *** if such structure is resting in whole on a permanent foundation." Ill. Rev. Stat. 1991, ch. 120, par. 482(13).

■ Under the Mobile Home Local Services Tax Act, structures that qualify under the statutory definition of "mobile home" are not

taxed and assessed as real property. Instead, these structures are subject to a privilege tax. Under the Mobile Home Local Services Tax Act, "mobile home" is defined as:

> "[A] factory assembled structure designed for permanent habitation and so constructed as to permit its transport on wheels, temporarily or permanently attached to its frame, from the place of its construction to the location, or subsequent locations, and placement on a temporary foundation, at which it is intended to be a permanent habitation, and situated so as to permit the occupancy thereof as a dwelling place ***, provided that any such structure resting in whole on a permanent foundation, with wheels, tongue and hitch removed at the time of registration *** shall not be construed as a 'mobile home', but shall be assessed and taxed as real property as defined by section 1 of the 'Revenue Act of 1939.' " Ill. Rev. Stat. 1991, ch. 120, par. 1201.

■ The tax imposed under the Mobile Home Local Services Tax Act is a tax on the privilege of owning an inhabited mobile home. *Berry v. Costello*, 62 Ill. 2d 342, 346 (1976). The establishment of a privilege tax for mobile homes was necessary because absent a privilege tax, unless a mobile home were placed on a permanent foundation, it would escape real estate taxation. *Berry*, 62 Ill. 2d at 347.

In the present case, the PTAB found that the trailers did not rest on "permanent foundations" within the meaning of the Revenue Act. In reviewing this finding, we keep the following principles in mind.

The PTAB, as an administrative agency, has the authority to construe statutory provisions in making decisions and determinations. *Lake County Board of Review*, 192 Ill. App. 3d at 614. A reviewing court is not bound by an agency's interpretation of a statute. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97 (1992). However, courts will give substantial weight and deference to the interpretation of an ambiguous statute by the agency charged with its administration and enforcement. *Abrahamson*, 153 Ill. 2d at 97-98. Such an interpretation expresses an informed source for determining the legislative intent. *Abrahamson*, 153 Ill. 2d at 98. An important reason for this deference is that agencies can make informed judgments upon the issues, based upon their experience and expertise. *Abrahamson*, 153 Ill. 2d at 98.

The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intent and meaning of the legislature. *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168 (1995). Courts should look to the language of the statute as the best indication of legislative intent, giving the terms of the statute their

ordinary meaning. *In re Application for Judgment*, 167 Ill. 2d at 168. Statutes should be construed in conjunction with other statutes addressing the same subject. *In re Application for Judgment*, 167 Ill. 2d at 168-69.

In the present case, neither the Revenue Act nor the Mobile Home Local Services Tax Act defines "permanent foundation." In light of this, the PTAB relied on the supreme court's language in *Stone v. Department of Employment Security Board of Review*, 151 Ill. 2d 257 (1992), which states a presumption that "statutes which relate to one subject were intended by the legislature to be consistent and harmonious with each other." *Stone*, 151 Ill. 2d at 262. The PTAB then referred to the definition of permanent foundation set forth in the Illinois Manufactured Housing and Mobile Home Safety Act (the Mobile Home Safety Act) (Ill. Rev. Stat. 1991, ch. 67$^1$/$_2$, par. 502), which defines permanent foundation as:

> "[A] closed perimeter formation consisting of materials such as concrete, mortared concrete block, or mortared brick extending into the ground below the frost line which shall include, but not necessarily be limited to, cellars, basements, or crawl spaces, but does exclude the use of piers." Ill. Rev. Stat. 1991, ch. 67$^1$/$_2$, par. 502(l).

In classifying the Woodhaven Lakes trailers, the PTAB construed the three statutes together and applied the definition of "permanent foundation" contained in the Mobile Home Safety Act. The parties in this case have expressly agreed that the trailers at issue "are resting on the ground or on gravel or concrete pads and support is provided by concrete blocks and/or wood beams." Additionally, each taxpayer submitted an affidavit stating that his trailer does not rest on a foundation that extends below the frost line. Still further, Ms. Templeton's affidavit indicates that, as the owner of a trailer business, who delivers trailers to Woodhaven Lakes, she has not observed or had knowledge of any lots on which the trailers rest on foundations extending below the frost line. Based on this evidence, the PTAB concluded that the trailers did not rest on permanent foundations and could not be assessed as real property.

On appeal, the County argues that the PTAB's application of the definition of "permanent foundation" from the Mobile Home Safety Act was contrary to law. Specifically, the County argues that the PTAB's decision is inconsistent with rules of statutory construction and that it will result in allowing the taxpayers to avoid taxation on their trailers altogether. We disagree.

With regard to statutory construction, the County argues that the PTAB erred in finding that the Revenue Act could be read in

concert with the definition of "permanent foundation" in the Mobile Home Safety Act. The County argues that the PTAB interpreted the *Stone* decision too broadly and that these statutes cannot be read in conjunction with one another because they do not involve the same subject matter. It is the County's position that while the Revenue Act relates to taxation, the Mobile Home Safety Act relates to public safety and, therefore, reflects a different object and purpose.

The County's argument is flawed in a number of respects. First, the fact that one statute concerns taxation while the other relates to public safety is irrelevant, as long as the statutes can be read in harmony with regard to the subject matter they have in common— mobile homes. See *Stone*, 151 Ill. 2d at 262. Where the language of a statute is unclear, it is appropriate for the court to compare other statutes on the same subject matter, even though not strictly *in pari materia. Freberg v. Board of Trustees of the Firemen's Pension Fund*, 128 Ill. App. 2d 369, 375-76 (1970). The definition of "permanent foundation" from the Mobile Home Safety Act can be construed in harmony with the Revenue Act.

The County has not demonstrated that the PTAB's application of the definition of "permanent foundation" from the Mobile Home Safety Act yields a result that deviates from legislative intent behind the Revenue Act. The only case cited to support its argument is *People ex rel. De Boer v. Geary*, 323 Ill. App. 32 (1944), a decision which fails to show how the PTAB's decision here was contrary to law. The *Geary* case states as a general proposition that the same word can have different meanings in different statutes. 323 Ill. App. at 39. However, we are not persuaded that the definition of "permanent foundation" in the Revenue Act should be different from the definition in the Mobile Home Safety Act.

The County argues that the Mobile Home Safety Act defines "permanent foundation" strictly and narrowly, while terms used in taxation statutes must be given their full meaning. The PTAB does not dispute the holding of the case relied upon by the County, *Mahon v. Nudelman*, 377 Ill. 331, 335 (1941), which requires courts to construe the words in a taxation statute with their full meaning and not the narrowest meaning of which they are susceptible. However, we are not persuaded by the County's argument that the Mobile Home Safety Act definition is too narrow to be applied in the taxation context.

The County also argues that the absence of a definition for "permanent foundation" in the Mobile Home Local Services Tax Act indicates the General Assembly's intent to employ a definition other than that contained in the Mobile Home Safety Act. The County

bases this argument on the fact that the General Assembly passed the Mobile Home Local Services Tax Act with the knowledge of the language in the Mobile Home Safety Act and, yet, chose to incorporate language from the Revenue Act instead. We disagree. There is no conflict in construing the Mobile Home Safety Act definition of "permanent foundation" with the statutory language of either the Revenue Act or the Mobile Home Local Services Tax Act.

Additionally, the County's reliance on *Nardi v. Segal*, 90 Ill. App. 2d 432 (1967), is misplaced. *Nardi* involved a plaintiff who claimed that a foreign divorce decree could be enforced by the chancery court. 90 Ill. App. 2d at 433-34. The plaintiff made this argument in spite of the fact that the Uniform Foreign Money-Judgments Recognition Act (Ill. Rev. Stat. 1965, ch. 77, pars. 121 through 129) specifically excluded from its definition of foreign judgment a judgment for support in matrimonial or family matters. *Nardi*, 90 Ill. App. 2d at 437. This court presumed that the legislature had prior knowledge of cases in which it had been recognized that there was no statutory authority for enforcing a foreign alimony judgment; yet, there was no subsequent legislation passed to include such a judgment in the act. *Nardi*, 90 Ill. App. 2d at 437-38.

The present case is distinguishable from *Nardi*. Here, the Revenue Act uses the term "permanent foundation," but does not provide any definition whatsoever. In *Nardi*, a definition existed in the statute but excluded one type of judgment. 90 Ill. App. 2d at 437.

Still further, the County misconstrues the similarities between the Revenue Act and the Mobile Home Local Services Tax Act to mean that the General Assembly intended to exclude from these taxation statutes any language from the Mobile Home Safety Act. Neither the Revenue Act nor the Mobile Home Local Services Tax Act defines permanent foundation, the key determinant of a portable structure's tax classification. The PTAB acted in accord with rules of statutory construction by referring to a definition in another statute, the Mobile Home Safety Act, on the same subject, mobile homes. See *Freberg*, 128 Ill. App. 2d at 375-76.

■ The County next argues that the PTAB's application of the Mobile Home Safety Act definition of "permanent foundation" is erroneous because it results in the complete evasion of taxation by mobile home owners. The County claims that, pursuant to the PTAB's classification scheme, the taxpayers in the present case, whose homes lack permanent foundations, can remove the wheels, hitch, and tongue from the homes and evade taxation under both the Mobile Home Local Services Tax Act and the Revenue Act. The County also claims that the taxpayers should be assessed for the trailers pursu-

ant to the Revenue Act because the trailers have connections to utilities, the taxpayers have sent their children to local schools, and some have voted in local elections or have otherwise manifested an intent to make the subject trailers permanent residences. This line of argument reflects a misinterpretation of the facts in the record as well as a misreading of the Mobile Home Local Services Tax Act.

The County has misrepresented the facts in the record. There is no evidence that the wheels, hitches, and tongues have been removed from the taxpayers' trailers. To the contrary, the facts indicate that the wheels remain attached to the trailer frames. Similarly, the axles are not removed from the frames.

More importantly, the attachment or dismantling of the wheels, tongue, and hitch is irrelevant to determining whether the Mobile Home Local Services Tax Act applies. Under the Mobile Home Local Services Tax Act, "mobile home" is defined as:

> "[A] factory assembled structure designed for permanent habitation and so constructed as to permit its transport on wheels, temporarily or permanently attached to its frame, from the place of its construction to the location, or subsequent locations, and placement on a temporary foundation, at which it is intended to be a permanent habitation, and situated so as to permit the occupancy thereof as a dwelling place ***, provided that any such structure resting in whole on a permanent foundation, with wheels, tongue and hitch removed at the time of registration *** shall not be construed as a 'mobile home', but shall be assessed and taxed as real property as defined by section 1 of the 'Revenue Act of 1939.' " Ill. Rev. Stat. 1991, ch. 120, par. 1201.

Contrary to the County's argument, there is no language excluding from the local services tax a portable structure from which the wheels, tongue, and hitch are removed. In order for a portable structure to be excluded from the local services tax, the structure must rest on a permanent foundation and have the wheels, tongue, and hitch removed. Consequently, there is no merit to the County's argument that the taxpayers' trailers in this case could not be assessed under the Mobile Home Local Services Tax Act. The properties in question would not wholly evade taxation under the PTAB's classification approach; they are, in fact, subject to the local services tax.

In addition, the County's attempt to characterize the trailers as real property, merely because the taxpayers manifested an intent to make the homes permanent residences, demonstrates a complete disregard for the language of the Mobile Home Local Services Tax Act. That act clearly expresses that structures subject to the local services

tax include those "intended to be a permanent habitation, and situated so as to permit the occupancy thereof as a dwelling place." Ill. Rev. Stat. 1991, ch. 120, par. 1201. In addition, "permanent habitation" is defined as "available for habitation for a period of 2 or more months." Ill. Rev. Stat. 1991, ch. 120, par. 1202.1.

Thus, the County's argument regarding the living habits or lifestyles of the taxpayers has no merit. Those lifestyle factors are irrelevant to the application of the local services tax, because the Mobile Home Local Services Tax Act was created as a mechanism for taxing those mobile home owners who do, in fact, use their homes as permanent habitations, but do not have permanent foundations.

The County erroneously maintains that the PTAB's classification scheme would result in an unfair shifting of tax burdens onto those taxpayers whose foundations happen to extend below the frost line, while alleviating the burdens from those taxpayers with temporary foundations. This argument, as already noted above, disregards the express terms of the Mobile Home Local Services Tax Act, the purpose of which is to assess a local services tax on mobile home owners who have temporary foundations. The local services tax is a reasonable means of defraying the costs incurred by local governmental units in providing certain benefits to the occupants and owners of mobile homes. See *Berry*, 62 Ill. 2d at 346.

■ The County's final argument is that the PTAB should have applied a common-law intention test that is applied when determining the existence of a permanent fixture under the Revenue Act. We disagree.

There is no statutory provision that sets forth the standard for determining whether an item constitutes a permanent fixture. Thus, courts must rely on a test based in the common law to classify permanent fixtures.

In contrast, the General Assembly has expressly set forth a scheme by which to classify portable structures used for dwellings. They may be assessable as real property under the Revenue Act if they rest on permanent foundations. Otherwise, such structures are considered to be mobile homes and are solely subject to a local services tax under the Mobile Home Local Services Tax Act.

There is no statutory authority to support the County's argument in favor of applying the permanent fixtures intention test to the trailers in this case. In fact, the County's argument disregards the express language of the Revenue Act and the Mobile Home Local Services Tax Act, which, if read in concert, defines the classification determinant as being the physical nature of the structure's foundation. Nothing in either of these two statutory provisions indicates that an intention test is the appropriate scheme.

The County asks this court to disregard the language of statutes *in pari materia* and, instead, apply a common-law standard for characterizing the property at issue. The County argues that factors other than those identified in any statute concerning the assessment of mobile homes or other portable structures should be considered, such as the annexation of the trailers to the land and the intentions of the taxpayers. The County cites to two cases in support of its contention: *In re Application of Beeler*, 106 Ill. App. 3d 667 (1982), and *In re Tax Objections of Hutchens*, 34 Ill. App. 3d 1039 (1976). Both of these cases are distinguishable from the present case. See *Boone County Board of Review v. Property Tax Appeal Board*, 276 Ill. App. 3d 989, 995 (1995) (wherein this court determined that the trial court properly affirmed the PTAB's determination that certain additions made to mobile homes were not taxable as real property and were, instead, properly classified as personal property).

The *Beeler* case involved the issue of whether two grain dryers that were mounted on floating concrete slabs could be classified as real property under the Revenue Act. *Beeler*, 106 Ill. App. 3d at 668. In that case, the court established and applied what is now the permanent fixture intention test. 106 Ill. App. 3d at 670. Under the intention test, three criteria are applied to determine whether an item has become a fixture:

> "First, the property must be annexed to the realty or to something appurtenant thereto; second, the property must be applied to the use or purpose to which that part of the realty, with which it is connected, is appropriated; and finally, the party making the annexation must intend to make a permanent accession to the freehold." *Beeler*, 106 Ill. App. 3d at 670.

The facts in *Beeler* are distinguishable from the facts in the present case. Whereas grain dryers are considered in a general class of property that may or may not be a permanent fixture, portable homes have a separate legislative scheme by which they are classified for taxation. Therefore, the County's reliance on *Beeler* is misplaced.

The *Hutchens* case involved a tenant-taxpayer who leased a lot for a period of five years and purchased a cabin that was transported to the lot for use as his dwelling. *Hutchens*, 34 Ill. App. 3d at 1040. The tenant paid taxes on the cabin under protest for the 1973 tax year. *Hutchens*, 34 Ill. App. 3d at 1040. There was evidence that the cabin was placed upon pillars on concrete blocks and that the cabin could be removed from the land without damaging the underlying real estate. *Hutchens*, 34 Ill. App. 3d at 1040-41. The court applied the intention test and determined that the cabin could be assessed as real property. *Hutchens*, 34 Ill. App. 3d at 1040-41.

*Hutchens* is distinguishable from the present case. Notably, the structure in *Hutchens* was not identified as a vehicle or similar portable structure such that it could have been classified based on its physical foundation pursuant to the Revenue Act. Nor was the structure in *Hutchens* a mobile home taxable under the Mobile Home Local Services Tax Act. Thus, there was no statutory scheme for classifying the cabin in *Hutchens*. Thus, the court considered it under common-law principles applicable to permanent fixtures. In contrast, the trailers in the present case are assessable based upon the nature of their foundations.

In addition, where two constructions of a statute are proposed, this court will avoid the one which yields absurd results and renders the statute difficult to enforce. See *People v. Johannsen*, 126 Ill. App. 2d 31, 34 (1970). In particular, taxation statutes should be construed so that they reflect a reasonable and commonsense meaning and so that it is not consequently difficult or impossible for taxes to be levied and collected. *In re Application for Judgment*, 167 Ill. 2d at 169. Here, the application of the intention test would lead to an absurd result and render it difficult to assess property taxes against trailer owners. Application of the intention test would require a local taxing jurisdiction to determine the individual intentions of each and every trailer owner. This is an exceedingly complicated, as well as a subjective, process. It would be a burdensome process, moreover, given that in Woodhaven Lakes alone, there are 6,154 lots to assess.

For the foregoing reasons, the decision of the PTAB is affirmed.

Affirmed.

McLAREN, P.J., and RATHJE, J., concur.