Rule 23 order filed
September 12, 2006;
Motion to publish granted
October 30, 2006.

NO. 5-04-0731

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE CHRISTIAN COUNTY BOARD OF REVIEW, | ) Appeal from the<br>) Circuit Court of<br>) Christian County. |
|    Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 01-MR-13 |
| | ) |
| THE PROPERTY TAX APPEAL BOARD, CAROL PRESNELL, and JACK PRESNELL, | ) <br>) <br>) Honorable James J. Eder and<br>) Honorable Michael R. Weber, |
|    Defendants-Appellees. | ) Judges, presiding. |

--------------------------------------------------------------------------------------------------------

| | |
|---|---|
| THE CHRISTIAN COUNTY BOARD OF REVIEW, | ) Appeal from the<br>) Circuit Court of<br>) Christian County. |
|    Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 01-MR-15 |
| | ) |
| THE PROPERTY TAX APPEAL BOARD and ALLEN C. BRAUNE, | ) <br>) Honorable James J. Eder and<br>) Honorable Michael R. Weber, |
|    Defendants-Appellees. | ) Judges, presiding. |

--------------------------------------------------------------------------------------------------------

| | |
|---|---|
| THE CHRISTIAN COUNTY BOARD OF REVIEW, | ) Appeal from the<br>) Circuit Court of<br>) Christian County. |
|    Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 01-MR-17 |
| | ) |
| THE PROPERTY TAX APPEAL BOARD and ROBERT A. NOREUIL, | ) <br>) Honorable James J. Eder and<br>) Honorable Michael R. Weber, |
|    Defendants-Appellees. | ) Judges, presiding. |

--------------------------------------------------------------------------------------------------------

| THE CHRISTIAN COUNTY BOARD OF REVIEW, | ) Appeal from the |
|---|---|
| | ) Circuit Court of |
| | ) Christian County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 01-MR-16 |
| | ) |
| THE PROPERTY TAX APPEAL BOARD, | ) |
| | ) |
| | ) |
| Defendant-Appellee and Cross-Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| BELINDA SEXSON, | ) Honorable James J. Eder and |
| | ) Honorable Michael R. Weber, |
| Defendant-Appellee. | ) Judges, presiding. |

_____

JUSTICE WELCH delivered the opinion of the court:

In 1999, the Christian County Board of Review (County) assessed five manufactured homes located in Christian County as real property. Each owner of the manufactured homes separately appealed the assessments to the Property Tax Appeal Board (PTAB) and argued that the manufactured homes should be assessed as personalty and not real property. The PTAB agreed with each owner of the manufactured homes and found that because the manufactured homes do not rest on a permanent foundation and because the County did not have a lawful method of assessing manufactured homes or like-kind property prior to 1979, they were improperly assessed as real property pursuant to the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2002)). The PTAB found that the manufactured homes should be treated, for taxation purposes, as mobile homes subject to the provisions of the Mobile Home Local Services Tax Act (35 ILCS 515/1 *et seq.* (West 2002)). The County appealed each PTAB decision to the circuit court of Christian County.

On review, the circuit court upheld the PTAB's findings that none of the manufactured homes rested on a permanent foundation. The circuit court also held that regarding four of the manufactured homes, the PTAB's findings that the County did not have a lawful method

2

of assessing manufactured homes or like-kind property prior to 1979 and that therefore the classification of the property did not freeze under section 24-5 of the Property Tax Code (35 ILCS 200/24-5 (West 2002)) were not against the manifest weight of the evidence. However, regarding the fifth manufactured home, the circuit court held that because the evidence was uncontradicted that the fifth manufactured home had been assessed as real property prior to 1979, the PTAB's findings "with respect to the assessment of [this manufactured home]" were against the manifest weight of the evidence. The County appeals the circuit court's adverse decisions on the four manufactured homes, and the PTAB appeals the circuit court's adverse decision on the fifth manufactured home. These cases have been consolidated. For the reasons that follow, we affirm the decisions of the PTAB, and we affirm in part and reverse in part the decisions of the circuit court.

Before addressing the issues raised on appeal, we note that this appeal comes to us from several decisions by the circuit court of Christian County. However, because the PTAB is an administrative agency subject to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2004)), our review focuses exclusively on the decisions of the PTAB and not the decisions of the circuit court. *Senachwine Club v. Putnam County Board of Review*, 362 Ill. App. 3d 566, 568 (2005). We also note that our review of an administrative agency's findings of fact is performed under a manifest-weight-of-the-evidence standard of review. *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 515 (2005). Furthermore, we review *de novo* an administrative agency's conclusion on a question of law. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005). Finally, where there is a mixed question of law and fact, we review an administrative agency's decision for clear error. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 143 (2006).

Essentially, there are three issues raised by the parties on appeal. These issues can be

3

summarized as follows: first, whether the PTAB's decisions that the County did not have a lawful method for assessing manufactured homes or like-kind property prior to 1979 and thereby improperly assessed the manufactured homes as real property pursuant to section 24-5 were against the manifest weight of the evidence, second, whether the PTAB erred in defining the term "permanent foundation" as it is used in the Property Tax Code, and third, whether the PTAB erred in assessing as real property air conditioner units attached to some of the manufactured homes. The evidence presented to the PTAB was as follows.

There are four owners of the five manufactured homes. Belinda Sexson is the owner of two of the manufactured homes. Carol and Jack Presnell, Allen C. Braune, and Robert A. Noreuil each own one manufactured home. Each owner of a manufactured home also owns the property where the manufactured home is located. Four of the manufactured homes were constructed after 1980. The fifth manufactured home, which is one of the two manufactured homes owned by Sexson, was built prior to 1979 and was on the property purchased by Sexson in 1995.

Each manufactured home rests on concrete blocks. Wood shims lie between the frame of the manufactured homes and the concrete blocks, to level the manufactured homes. The concrete blocks are not mortared together. The concrete blocks rest on concrete pads, piers, or gravel. None of the concrete pads or piers extends more than a few inches below the ground.

Each manufactured home has an exterior skirting surrounding its perimeter. The skirting does not support the homes in any way. Some of the manufactured homes have a central-air-conditioning unit attached. The County assessed these attached air conditioners as real property.

Ronald Finley, the chief county assessment officer of Christian County, has been employed with the Christian County assessment office as the supervisor of assessments from

4

October 16, 1978, to May 16, 1994, and since December 1, 1996. Evidence was presented by Finley in regard to Christian County's methods for assessing mobile home property prior to 1979. According to an affidavit submitted by Finley, he "made an exhaustive review of the records and documents" from 1975 through 1978, and based upon this review he concluded that the County had a general policy of assessing mobile homes as follows:

"[A]ll factory[-]assembled structures designed for permanent habitation which are not located in a mobile home park or are not situated on leased ground [and] which have wheels, tongues[,] and hitches removed were and are treated as real estate and assessed as real estate for the purposes of *ad valorem* taxation. Those with wheels, tongues[,] and hitches intact, or those located in a mobile home park or, for the most part, on leased ground, were and are treated for taxation purposes under the Mobile Home Local Services Tax Act ***."

The affidavit, however, noted some instances where the County assessed mobile homes located on leased property as real property. In addition, the affidavit pointed out that during 1980 or 1981, Finley had conducted a review of all "factory[-]assembled dwellings" to determine if similar properties were being assessed by the same method and he learned that some mobile homes that had the tongues, hitches, and wheels intact were improperly assessed as real property and that some mobile homes with tongues, hitches, and wheels removed were improperly assessed as personalty. These improper assessments were corrected upon discovery.

Finley testified that the criterion used by Christian County to determine whether a mobile home should be taxed as real property or personalty is whether the owner of the mobile home owns the underlying property where the mobile home is located. Finley testified that it was never the policy of the County to tax mobile homes based on whether they rested on a permanent foundation.

5

Upon reviewing the evidence, the PTAB found that the County failed to establish that it had a uniform consistent practice of classifying and assessing mobile homes as real property prior to 1979. As a result, the PTAB found that because the County did not have a lawful method for assessing mobile homes or like-kind property prior to 1979, section 24-5 did not "freeze" the classification of manufactured homes. In addition, the PTAB found that the manufactured homes did not rest in whole on a permanent foundation and were therefore improperly assessed as real property pursuant to the Property Tax Code.

The first issue raised on appeal pertains to section 24-5 and the PTAB's findings that the County did not lawfully assess mobile home property or like-kind property prior to 1979. Section 24-5 was enacted in 1979 to prevent the reclassification of personal property to real property after the General Assembly abolished the *ad valorem* personal property tax. *Oregon Community Unit School District No. 220 v. Property Tax Appeal Board*, 285 Ill. App. 3d 170, 176 (1996). The current version of section 24-5 provides as follows:

"No property lawfully assessed and taxed as personal property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as real property subject to assessment and taxation. No property lawfully assessed and taxed as real property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as personal property." 35 ILCS 200/24-5 (West 2002).

Under section 24-5, if a property was lawfully assessed as real property or personal property prior to January 1, 1979, that property and property of like kind must be classified the same way after January 1, 1979.

In the instant case, the PTAB found that the County did not have a lawful method of assessing mobile home property prior to 1979 and that, therefore, the status of mobile home property or property of like kind did not freeze. The County disputes the PTAB's findings,

6

arguing that the evidence demonstrated that the County had a lawful consistent method of assessing mobile homes as real property prior to 1979 and that, therefore, the mobile homes in the instant case were properly assessed as real property pursuant to section 24-5.

Under section 24-5, classifications are only "frozen" if the property was "lawfully assessed" prior to 1979. *Oregon Community Unit School District No. 220*, 285 Ill. App. 3d at 183. "It is well established that it is unlawful for an assessor to exempt one kind of property while classifying the same kind of property in the same district as nonexempt." *Oregon Community Unit School District No. 220*, 285 Ill. App. 3d at 178. "The uniformity clause of the constitution [(Ill. Const. 1970, art. IX, §4(a))] prohibits a taxing official to [*sic*] value one property in one manner and then value the same kind of property, in the same district, in another manner." *Oregon Community Unit School District No. 220*, 285 Ill. App. 3d at 183.

In the instant case, Finley's affidavit and testimony support the PTAB's findings that the County did not have a lawful method of assessing mobile home property. The County's policy, as set forth by Finley, provided that mobile homes are assessed based on whether the mobile homes are located on land owned by the owners of the mobile homes or whether the mobile homes are located on land that was leased. However, the evidence reveals that this general policy was not consistently applied. Finley testified that in 1980 or 1981, he reviewed the assessments of similar properties and found that some were not assessed in accordance with the County's policy. According to Finley's affidavit, some mobile homes that were located on leased grounds were assessed as real property. Other evidence also revealed a disparate treatment of similar properties in various townships. For example, evidence revealed that 11 of 27 factory-assembled homes in Bear Creek Township were treated as personalty, while the remaining 16 were treated as real property. The County offered no explanation for the disparity.

7

Upon reviewing the record, we cannot conclude that the PTAB's findings that the County did not have a consistent method, and hence a lawful method, of assessing mobile home property or property of like kind prior to 1979 are against the manifest weight of the evidence. As a result, the PTAB's decision that section 24-5 does not permit the County to assess the manufactured homes at issue as real property was also not in error. Because the County failed to demonstrate that mobile home property or property of like kind had been lawfully assessed as real property prior to 1979, section 24-5 does not provide the County with a means to assess the manufactured homes in the instant case as real property.

Our decision extends to the manufactured home that was constructed prior to 1979, which the circuit court held was properly assessed as real property under section 24-5 because the County had always assessed this specific property as real property. Again, because the County failed to show that it had a lawful method of assessing mobile home property, under the plain terms of the statute section 24-5 cannot be employed. Section 24-5 only applies to property that was lawfully assessed. The County has failed to show that said property was lawfully assessed as real property. Accordingly, we reverse the circuit court's decision as it pertains to the pre-1979 manufactured home owned by Sexson. Because the PTAB's findings that the County did not lawfully assess mobile home property or property of like kind prior to 1979 were not against the manifest weight of the evidence, we affirm the PTAB's findings that the County improperly assessed the five manufactured homes as real property in accordance with section 24-5.

The second issue raised on appeal pertains to the PTAB's definition of the term "permanent foundation." In the instant case, the County also assessed the manufactured homes as real property based on the claim that because the manufactured homes rest in whole on a permanent foundation, they were real property in accordance with the Property Tax Code and the Mobile Home Local Services Tax Act (35 ILCS 515/1 *et seq.* (West 2002)).

8

The PTAB correctly observed that the Property Tax Code and the Mobile Home Local Services Tax Act do not define the term "permanent foundation," and so the PTAB turned to other statutes that do define the term, and the PTAB adopted a definition of a permanent foundation for the purposes of the Property Tax Code and the Mobile Home Local Services Tax Act. Under the definition adopted, the PTAB found that the manufactured homes did not rest on a permanent foundation and therefore were improperly assessed as real property. The County now challenges the PTAB's definition of a permanent foundation.

Before setting forth the definition of the term "permanent foundation" that the PTAB adopted and the specific objections raised by the County to this definition, we note that the PTAB has the authority to construe statutory provisions in making decisions and determinations but that its interpretation of a statute presents a question of law and is therefore subject to *de novo* review. *Geneva Community Unit School District No. 304 v. Property Tax Appeal Board*, 296 Ill. App. 3d 630, 633 (1998). However, although the reviewing court is not bound by an agency's interpretation of a statute, courts will give substantial weight to the interpretation of an ambiguous statute by the agency charged with its administration and enforcement. *Geneva Community Unit School District No. 304*, 296 Ill. App. 3d at 633. Agencies are able to make informed judgments upon the issues, based on their experience and expertise. *Geneva Community Unit School District No. 304*, 296 Ill. App. 3d at 633.

Section 1-130 of the Property Tax Code states in relevant part that real property includes "any vehicle or similar portable structure used or so constructed as to permit its use as a dwelling place, if the structure is resting in whole on a *permanent foundation*." (Emphasis added.) 35 ILCS 200/1-130 (West 2002). The Mobile Home Local Services Tax Act provides that if a home fits within the definition of a mobile home, it is subject to the privilege tax and shall not be assessed and taxed as real property. 35 ILCS 515/1 *et seq.*

9

(West 2002). Section 1 of the Mobile Home Local Services Tax Act defines the term "mobile home" as follows:

> " '[M]obile home' means a factory[-]assembled structure designed for permanent habitation and so constructed as to permit its transport on wheels, temporarily or permanently attached to its frame, from the place of its construction to the location, or subsequent locations, and placement on a temporary foundation, at which it is intended to be a permanent habitation, and situated so as to permit the occupancy thereof as a dwelling place for one or more persons, provided that any such structure *resting in whole on a permanent foundation*, with wheels, tongue[,] and hitch removed at the time of registration provided for in Section 4 of this Act, shall not be construed as a 'mobile home'[] but shall be assessed and taxed as real property as defined by Section 1-130 of the Property Tax Code." (Emphasis added.) 35 ILCS 515/1 (West 2002).

Like the Property Tax Code, the Mobile Home Local Services Tax Act does not define the term "permanent foundation."

Recognizing that neither statute defines the term "permanent foundation," the PTAB looked to several other statutes and codes that do define the term. The statutes included the Illinois Manufactured Housing and Mobile Home Safety Act (430 ILCS 115/2(a) (West 2002)), the Manufactured Home Quality Assurance Act (430 ILCS 117/10 (West 2002)), and the Mobile Home Park Act (210 ILCS 115/2.10 (West 2002)). The codes included the Illinois Manufactured Home Installation Code (77 Ill. Adm. Code §870.20 (Conway-Green CD-ROM 2000)) and the Manufactured Home Community Code (77 Ill. Adm. Code §860.150(a) (Conway-Green CD-ROM 2000)). Mobile homes are the subject matter in each of these state statutes or codes. Each statute and code examined by the PTAB contains a definition of the term "permanent foundation." The similarities among these definitions

10

include a description of a closed or continuous perimeter foundation of material such as mortared concrete block that extends into the ground below the established frost depth or is intended to support and anchor the unit to withstand the specified design loads. After considering the definitions in these statutes and codes, the PTAB defined the term "permanent foundation" as "a continuous perimeter formation composed of concrete, mortared concrete block, mortared brick[,] and the like that extends below the frost line that actually supports and anchors the mobile home." Based on the evidence presented in the underlying cases, the PTAB found that none of the manufactured homes rests in whole on a permanent foundation.

On appeal, the County does not challenge the PTAB's findings that the manufactured homes do not rest on a permanent foundation as that term is defined by the PTAB. The County instead challenges the PTAB's definition of the term and argues that the PTAB's definition is erroneous and that it should have defined a permanent foundation as "anything that transfers weight of a structure to the earth intended to last [for] the usefulness of said structure," which is the definition employed by the County. The County makes two arguments to support its position that the definition adopted by the PTAB is erroneous.

First, the County contends that the PTAB erred in forming a definition of the term "permanent foundation" from the statutes and codes it examined. The County contends that the statutes and codes from which the PTAB garnered a definition did not intend to define the term "permanent foundation" for "purposes of taxation" and that therefore they are not applicable to the instant case. However, the appellate court has already rejected this argument in *Lee County Board of Review v. Property Tax Appeal Board*, 278 Ill. App. 3d 711, 720-21 (1996). In *Lee County Board of Review*, the appellate court affirmed the PTAB's definition of the term "permanent foundation" as taken from the Illinois Manufactured Housing and Mobile Home Safety Act. *Lee County Board of Review*, 278 Ill. App. 3d at 722.

11

In *Lee County Board of Review*, the PTAB acknowledged that neither the Revenue Act (now known as the Property Tax Code) nor the Mobile Home Local Services Tax Act defined the term "permanent foundation." *Lee County Board of Review*, 278 Ill. App. 3d at 722. Accordingly, the PTAB turned to the definition set forth in the Illinois Manufactured Housing and Mobile Home Safety Act. On review, the appellate court noted that because the statutes involve the same subject matter–mobile homes–the PTAB's use of the definition from the Illinois Manufactured Housing and Mobile Home Safety Act was proper. *Lee County Board of Review*, 278 Ill. App. 3d at 721. The court stated, "[I]t is appropriate for the court to compare other statutes on the same subject matter, even though not strictly *in pari materia*." *Lee County Board of Review*, 278 Ill. App. 3d at 721. As in *Lee County Board of Review*, we do not believe the PTAB erred in defining the term "permanent foundation" based on definitions in other similar statutes that also involve the same subject matter–mobile homes.

Next, the County contends that the PTAB's definition of the term "permanent foundation" is erroneous because under the definition, no mobile home can rest wholly on a perimeter foundation because it would collapse from the lack of support. To support this claim, the County cites the testimony of Allen Braune, an owner of one of the manufactured homes at issue in the instant case, who testified during one of the hearings that he believed that if his manufactured home rested only on a perimeter foundation, it would collapse. The County also cites *Sweitzer v. City of O'Fallon*, 135 Ill. App. 3d 1, 4 (1985), wherein this court stated: "[T]he mobile home of today remains unsuitable for attachment to a permanent foundation. It is generally supported by a steel frame and tied down by cables to prevent it from being blown away or displaced in severe winds." No additional evidence was presented to support the County's position. The County did not offer any expert testimony to support its claim. In any event, in reviewing an agency's construction of a statute, we defer to an

12

agency's experience in construing and applying the statutes that it administers. Based on the record in this case, we do not agree that the PTAB's definition of the term "permanent foundation" is erroneous because it renders the Property Tax Code and the Mobile Home Local Services Tax Act meaningless because no mobile home can be supported by a permanent foundation.

In sum, we reject the County's argument that the PTAB's definition is in error. Because the County does not challenge the PTAB's application of the facts to this definition, we affirm the PTAB's findings that the manufactured homes are mobile homes within the meaning of the Mobile Home Local Services Tax Act and not subject to real estate taxation in accordance with the Property Tax Code. Accordingly, we affirm the PTAB's findings that the County improperly assessed the manufactured homes as real property.

We now turn to the third issue raised on appeal, whether the PTAB erred in finding that the County improperly assessed the air-conditioning units that were attached to the mobile homes as real property. In *Boone County Board of Review v. Property Tax Appeal Board*, 276 Ill. App. 3d 989, 997 (1995), the appellate court held that items merely attached to personalty cannot be taxed as real property. The County does not challenge this principle but argues that because the manufactured homes were properly assessed as real property, the air conditioners also were properly assessed as real property. Because our decision affirms the PTAB's findings that the manufactured homes were improperly assessed as real property, we agree with the PTAB that the air conditioners also were improperly assessed as real property. Accordingly, we affirm the PTAB's decision that the air conditioners attached to the manufactured homes were improperly assessed as real property.

For the foregoing reasons, we affirm the circuit court's decisions pertaining to the manufactured homes owned by Carol and Jack Presnell, Allen C. Braune, and Robert A. Noreuil. In addition, we affirm the circuit court's decision as it pertains to the manufactured

13

home owned by Belinda Sexson that was manufactured after 1979. Finally, we reverse the circuit court's decision pertaining to the manufactured home owned by Belinda Sexson that was manufactured prior to 1979.

Affirmed in part and reversed in part.

GOLDENHERSH and HOPKINS, JJ., concur.